### *In Re* THE WARWICK FINANCIAL COUNCIL.

### APRIL 7, 1916.

(1) *Elections. Taxation. Constitutional Law.*

A proposed act of the general assembly, entitled "An act to create a financial council in the town of Warwick" provided that there should be a financial council of ten members and that all power and authority theretofore by law conferred upon, vested in or exercised by the electors of the town qualified to vote upon any proposition to impose a tax or for the expenditure of money in financial town meeting should be conferred upon and vested in and exercised by the financial council, but that the town council should continue to exercise all the powers and authority conferred upon them by general and special laws.

The act provided that the electors qualified to vote upon any proposition to impose a tax or for the expenditure of money should elect the financial council, and for the nomination of candidates by such class of electors and for a special ballot.

Cons. R. I., Art. II, as amended by Art. VII of amendments, provides that every male citizen of the United States having the qualifications of residence, etc., in the state and town or city who is possessed of real estate of the value of $134 shall have a right to vote in the election of all civil officers and on all questions in all legal town or ward meetings so long as he continues so qualified; that every such citizen who has registered under the law and who shall within the year next preceding have paid a tax assessed upon his property valued at least at $134 shall have a right to vote in the election of

all civil officers and on all questions in all legally organized town or ward meetings and that every such citizen who has registered but has not paid the tax shall have a right to vote in the election of all civil officers and on all questions in all legally organized town or ward meetings except in the election of the city council of any city or upon any proposition to impose a tax or for the expenditure of money in any town or city.

*Held*, that as financial town meetings have been held according to law in this state not by virtue of any requirement or power under the constitution, but under statutory authority of the general assembly, the general assembly might in the exercise of its power prescribe that the financial town meeting should no longer be authorized by law and that taxes might be levied by some other method.

*Held*, further, that if the assembly should provide that taxes should be assessed through the agency of another body and the electors were no longer empowered by law to meet in town meeting, there could be no legal town meeting of such electors and hence no questions in such a meeting to be voted on by the electors and therefore the constitutional provisions would not be violated.

*(2)   Elections.   Taxation.   Constitutional Law.*

The purpose of a proviso is never to enlarge a right previously given but on the contrary to limit it; therefore the effect of the proviso in Art. II of the constitution, as amended by Art. VII of amendments, that no person shall at any time be allowed to vote in the election of the city council of any city or upon any proposition to impose a tax or for the expenditure of money in any town or city unless he shall within the year next preceding have paid a tax assessed upon his property therein valued at least at $134 does not give the registry voter who has paid a tax on his property valued at $134 any greater right than he possesses under the broad right to vote "on all questions in all legally organized town or ward meetings," but simply limits the right of the elector, who has merely registered and who has not paid the tax, to vote on all questions except propositions to impose a tax or for the expenditure of money.

*(3)   Taxation.*

The power of taxation is vested primarily in the state and may be lawfully exercised by the subordinate political bodies of the state only in so far as and in the manner in which said power is delegated to them by the legislature.

*(4)   Elections.   Taxation.*

While the members of the proposed financial council are "civil officers," nevertheless the proposed act in providing that they shall be elected by the electors of the town qualified to vote on any proposition to impose a tax or for the expenditure of money, does not limit any constitutional voting rights of the registry voter, since, registry voters under the constitution have the right to vote for those officers only whose election is required to be by the people.

*To the Honorable the House of Representatives of the State of
Rhode Island and Providence Plantations:*

We have received from your honorable body a resolution
requesting our opinion upon the following question:

"1.   Is Section 1 of House Act No. 255, January Session,
A. D. 1916, entitled 'An act to create a Financial Council in
the Town of Warwick,' a copy of which is appended hereto
and. made a part hereof, taken in connection with the
provisions of Section 4 of said proposed act which provide
for the election of the members of said financial council
inconsistent with the provisions of Article II of the Constitu-
tion of the State of Rhode Island, as amended by Article 7
of the amendments thereto ?"

These sections are as follows:

"Section 1.   There shall be a financial council consisting
of ten members in and for the town of Warwick.   All power
and authority heretofore by law conferred upon, vested in,
or exercised by the electors of the town of Warwick qualified
to vote upon any proposition to impose a tax or for the
expenditure of money in financial town meeting assembled,
are hereby conferred upon and vested in and shall be
hereafter exercised by said financial council.

"The town council of the town of Warwick shall continue
to exercise all the powers and authority conferred upon the
same by the general and special laws, and nothing shall be
herein construed so as to derogate from or limit said powers
and authority."

"Sec. 4.   After the special election held as hereinafter
provided, the electors of the town of Warwick qualified to
vote on any proposition to impose a tax or for the expenditure
of money shall at the biennial election in November, 1918,
and quadrennially thereafter, give in their votes in their
respective voting district for five members of the financial
council, who shall hold their respective offices for the term of
four years, and until their successors are elected and quali-

fied; and at the biennial election in November, 1920, and quadrennially thereafter, the electors of the town of Warwick qualified to vote upon any proposition to impose a tax or for the expenditure of money, shall give in their votes for five members of the financial council who shall hold their respective offices for the term of four years and until their successors are elected and qualified.

"The nomination and election of members of the financial council at the regular biennial elections as hereinbefore provided shall be governed by the provisions of Chapter 10 and Chapter 11 of the General Laws, and all amendments and additions thereto: *Provided, however*, that the nomination of candidates for said financial council in caucus or convention or by nomination papers shall be made only by the electors of said town qualified to vote on any proposition to impose a tax or for the expenditure of money in said town. Special ballots containing the nominations for members of the financial council in addition to the nominations for offices which can be voted for by voters qualified to vote by registry at any biennial election of town officers, shall be printed for the use of such electors only as are qualified to vote upon any proposition to impose a tax or for the expenditure of money in said town. Said special ballots shall be printed on paper of a different color from that of the other official ballots or the specimen ballots, and shall have printed on the back and outside the additional words 'financial council,' and shall be given by the supervisors to such electors only as are qualified to vote on any proposition to impose a tax or for the expenditure of money in said town.

"When from any cause there shall be a failure to elect any member of the financial council at any biennial election, the polls shall be re-opened on the seventh day after said election, and like proceedings shall be had until an election takes place."

Article II of the Constitution, as amended by Article VII of Amendments, enumerates the various classes of voters under the Constitution. They are generally as follows:

(1)   Every male citizen of the United States having the qualifications of residence, etc., in the state and town or city, who is possessed in his own right of real estate of the value of one hundred and thirty-four dollars "shall thereafter have a right to vote in the election of all civil officers and on all questions in all legal town or ward meetings so long as he continues so qualified."

(2)   Every such citizen who has registered under the law and who shall within the year next preceding have paid a tax assessed upon his property therein, valued at least at one hundred and thirty-four dollars, "shall have a right to vote in the election of all civil officers, and on all questions in all legally organized town or ward meetings."

(3)   Every such citizen who has registered under the law, but has not paid the required tax, "shall have a right to vote in the election of all civil officers and on all questions in all legally organized town or ward meetings" except "in the election of the city council of any city, or upon any proposition to impose a tax or for the expenditure of money in any town or city."

Two questions seem to be raised for consideration:

1.   Does Section 1 of the proposed act wherein it vests in said financial council all powers exercised by the tax-paying voters in financial town meeting assembled deprive the real and personal property voters of any right given to them under said Article II of the Constitution, and is it inconsistent with the power given them to vote "on all questions in all legally organized town or ward meetings ?"

2.   Does Section 4 of the proposed act, wherein it provides for the election of the members of said financial council by the taxpaying voters only, deprive the registry voters of any right given them under Article II of the Constitution, and is it inconsistent with the right given them "to vote in the election of all civil officers ?"

Upon the first question:   Does Article II of the Constitution guarantee to the taxpaying voters of a town the right

to assemble in financial town meeting ? It provides that they "shall have a right to vote  .  .  .  on all questions in all legally organized town or ward meetings." The constitutional provision becomes effective to vest this right only in case there shall be a legally organized town meeting. It does not say that there shall be legally organized town meetings. It presupposes a legally organized town meeting, *i. e.*, a town meeting held according to law. Financial town meetings have been held according to law in the history of the state not by virtue of any requirement or power under (1) the Constitution or prior to the Constitution, but under statutory authority of the General Assembly. The General Assembly may, therefore, in the exercise of its proper power prescribe that the financial town meeting shall no longer be authorized by law, and that taxes may be levied by some other method.

From very early times the course of legislation by the General Assembly has furnished a legislative construction that the towns derived all their powers from the legislative enactments passed from time to time.

In *City of Newport* v. *Horton*, 22 R. I. 196, at page 202, the court said: "The charter of 1663 made a marked change in the conduct of public affairs. It concentrated power in the General Assembly. It gave that body authority to admit freemen; to elect and constitute such offices and officers as they should think requisite for the ordering and arranging the affairs of government; to make such laws as should seem to them meet for the government and ordering of the lands granted and the people inhabiting the same; to regulate the way and manner of all elections to offices; to prescribe and limit the numbers of bounds of cities and towns, as well as to do many other things, quite inconsistent with the powers reserved to the towns under the first charter. The action of the Assembly was in accordance with the increased power."

With relation to town and state revenue, the General Assembly early began to exercise its power. On May

6th, 1702, an act was passed, entitled   "An act for ye Enabling ye Generall Treasurer of this Her Maj'ties Colony for ye Collecting or to order ye Collecting of all Such Colony Rates as Shall be hereafter from time to time Levied upon ye Inhabitants of sd Colony and Likewise for ye Enableing Each Town in ye Colony for ye annuall Choice of assessors for ye assessing all Rates that shall be assessed on Each Town in ye sd Colony." Pub. Laws, R. I. 1636–1705, page 54.

This act provided in general the machinery for the assessment and collection of a colony tax and under its provisions each town was to annually elect "three able knowing men in Each Town for assessors or rate makers to stand for ye year Ensueing who Shall be Engaged as all other Town officers they or ye maj'r part of them in Each Town so Chosen to make and proportion all Town Rates and likewise each Towns part of all colony Rates." The power was extended expressly to the assessors to levy and apportion the town taxes by an act passed January 4, 1703, found at page 59, *Ibid*, which provided:   "And be it Further Enacted yt according to ye way & prescription ordered & Enacted for ye Gen'll Treasurer Geathering in ye Colony rates, so ye Town Treasurer in each town in ye Colony is hereby required & Impowered to take ye Same measures & means for ye geathering all town rates annually assessed on any or each Town in ye Colony & ye town Treasurers of Each town have hereby full power & authority to use all Such Methods as ye Generall Treasurer is Impowered in Sending forth their warrants & geathering ye same. . . ."

Apparently from a consideration of these statutory enactments the assessors not only exercised the power of fixing valuations which generally is the only power exercised by them under our present law, but they also were the proper body to fix and determine the rates of taxation. We find no power given to the freemen of the towns in this latter respect until the Digest of 1767, where at page 264, in "An *Act*, regulating the Proceedings of Town-Meetings in this Colony," it is provided as follows:

"*Be it Enacted by the General Assembly, and by the Authority thereof it is Enacted*, That every Moderator of any Town-Meeting in this Colony, when legally chosen, shall, after having heard the Freemen's Allegations respecting the Business of the Meeting, or any Thing relating thereto, and being called upon by Seven Freemen, to put any Part of the Town's Business to vote, shall forthwith cause such Vote to be put to the Meeting, upon the Penalty of being forthwith suspended from the Office of Moderator, and shall pay a Fine of Forty Shillings, to be recovered by the Town-Clerk, by an Action of Debt before any Two Justices, or Wardens of the Town, for the Use of such Town; and another Moderator shall be chosen in his Room.

"*AND be it further Enacted*, That all Things relating to Town Affairs shall be decided by a Majority of the Voices of the Freemen then present.

"*AND be it further Enacted*, That each and every Town in this Colony shall have, and they are fully empowered to make such Laws and Acts in their Town, for raising such Sums of Money as shall be by them thought needful for the defraying the incident Charges thereof, by a Tax on real or personal Estates, or both, and also to order a Poll Tax in any such Assessment, if they shall think proper.

"*AND be it further Enacted by the Authority aforesaid*, That no Vote shall be passed in any Town-Meeting concerning Money in the Town-Treasury, disposing of Land, or making a Rate, unless Mention be made, and Notice given thereof, in the Warrant given out for the warning of such Meeting; and that the Town-Clerk of each Town shall be the Person to grant such Warrant, unless in Cases where the Law otherwise directs; which Warrant shall be directed to the Town-Sergeant, or to either of the Constables of the Town."

In the Digest of 1822, at page 255, is the following:

"Sec. 6. *And be it further enacted*, That each and every town in this State shall have power and authority, when

legally convened, to make such acts and laws in their town, for the raising such sums of money as shall by them be thought needful for the defraying the incidental charges thereof, or paying the town debts, by a tax on real and personal estate, or both; but no poll tax shall be levied or collected for any purpose whatever; and any town may include the said town's proportion of any State tax which has been or may be assessed, in the assessment of such town tax, and pay the same out of the town treasury, provided the same shall be voted at a legal meeting of the freemen of such town."

In the preceding section, we find a definition of what was a "legal meeting of the freemen:"

"Sec. 5.  *And be it further enacted*, That seven freemen at least shall be necessary to constitute a legal town meeting, and all things relating to town affairs shall be decided by a majority of the votes of the freemen present; except that in the town of Providence, twenty-one freemen, at least, shall be necessary to constitute a meeting as aforesaid, and no special meeting shall be there called unless the application to the town clerk therefor shall be signed by the number aforesaid."

It is apparent from a consideration of the provisions contained in the Digest of 1844 that the General Assembly organized under the Constitution considered that it was necessary to enact suitable legislation under that instrument to give the taxpayers the same right which the freemen exercised before its adoption.  This was at least a legislative construction of the provisions of the Constitution under consideration and was carried out under Article IV, Section 10, which provides:  "The general assembly shall continue to exercise the powers they have heretofore exercised, unless prohibited in this constitution."

The Constitution by its own terms was to go into operation "on the first Tuesday of May, in the year one thousand eight hundred and forty-three."

At the January Session, 1844, "An Act Establishing the Digest of Laws, etc.," was enacted.    "An Act declaring Towns to be Bodies Corporate; and prescribing the manner of recovering debts due from Towns," provides at p. 297 of said Digest:

"Sec. 8.    The electors of each and every town who are entitled to vote on any proposition to impose a tax shall have power and authority when legally convened, to make such acts and laws in their towns for the raising such sums of money only as shall be by them thought needful for the defraying the necessary incidental charges and expenses thereof, or paying the town debts, by a tax on real or personal estate or both; but no poll tax shall be levied or collected for any purpose whatever; and any town may include the said town's proportion of any state tax which may be assessed, in the assessment of such town tax, and pay the same out of the town treasury, provided the same shall be voted at a legal meeting of the said electors of such town."

The similarity between this provision enacted under the Constitution and the provision from the Digest of 1822 enacted under the charter is striking.    With the exception of the necessary changes introduced therein due to the change in suffrage under the Constitution, the wording of the two provisions is practically identical.

"An Act to regulate the Assessing and Collecting of Taxes," passed at the January Session, 1855, Section 1 reads as follows:    (p. 1159, Pub. Laws, 1844-1857)    "The electors of any town qualified to vote upon a proposition to impose a tax, when legally convened, may vote to raise such sums of money as may be needful for defraying the necessary expenses of the town, support of schools, or paying the town debts or State taxes, by a tax on real or personal estate.    But no poll tax shall be levied by any town.    No vote shall be passed for raising money by taxation unless notice thereof shall have been given in the warrant for calling the meeting."

This provision appeared in still another form in the Revised Statutes of 1857, Chapter 39, § 1, as follows: "The electors of any town qualified to vote upon a proposition to impose a tax, when legally assembled, may levy a tax for the purposes authorized by law, on the ratable property of the town, either in a sum certain, or in a sum not less than a certain sum, and not more than a certain sum, or in a certain percentage on the valuation of such property to be made by the assessors of the town; and may order the time when such tax shall be assessed, and when the same shall be paid."

The last sentence in the provision of the act of 1855 was embodied in a separate section and we find it in Revised Statutes, 1857, Chapter 31, § 11. "No vote shall be passed in any town meeting concerning the disposing of the town's land or making a tax, unless special mention be made, and notice thereof given in the warrant issued for the warning of such meeting; and the town clerk of each town shall grant such warrant, unless in cases where the law otherwise directs; which warrant shall be directed to the town sergeant or to either of the constables of the town."

Chapter 39, § 1, Revised Statutes, 1857, has been re-enacted in all of the revisions of the statutes since that time. See General Statutes, 1872, Chapter 40, § 1; Public Statutes, 1882, Chapter 43, § 1; General Laws, 1896, Chapter 46, § 1; General Laws, 1909, Chapter 58, § 1.

The General Assembly has from time to time by statutory enactment vested certain additional powers in the taxpaying voters in town meeting assembled. "The electors of any town or city qualified to vote on a proposition to impose a tax, when legally assembled, may vote to exempt, or may authorize the town or city council of such town or city, for a period not exceeding one year, to exempt from taxation for a period not exceeding ten years, such manufacturing property as may hereafter be located in said town or city in consequence of such exemption, and the land on which such property is located." Gen. Laws, 1909, Chap. 56, § 4.

Each town at some regularly called meeting of the electors thereof who are entitled to vote upon any proposition to impose a tax is required to annually appropriate necessary sums for the maintenance and repair of highways and bridges. Gen. Laws, 1909, Chap. 83, § 3. And they may make a special appropriation for a particular highway or bridge, and may provide whether the same shall be expended by contract or otherwise. *Ibid*, § 6.

Not only has the General Assembly conferred upon the tax-paying voters by suitable statutory enactments the powers which they exercise in financial town meeting, but very particular regulations have been enacted governing the calling, and warning of such meetings and the quorum, government, and conduct of the same. See Gen. Laws, 1909, Chap. 47 and Chap. 48. The legislature has passed numerous special laws fixing the time for holding financial town meetings in the various towns, and has also provided in many instances for the canvass of the voting lists prior to the same. The most recent exercise of that power with relation to the government of financial town meetings is illustrated by two acts passed at the January Session, 1915. Chapter 1210 of the Public Laws prescribes the exact form of warrant to be used for calling and warning a financial town meeting, and Chapter 1211 prescribes the exact forms of resolutions to be passed at such meetings for levying a tax.

No doubt has ever been expressed of the plenary power of the General Assembly over the entire subject of taxation, except as limited by express constitutional provision, and this court has so held. "The power to exempt property from taxation is the converse of the power to determine what property shall be the subject of taxation; the selection of certain property for the purpose of taxation being the exclusion or exemption of that which is not selected. It is, therefore, included necessarily in the power to tax, which resides in the State alone, and consequently can be exercised only by the General Assembly, representing the sovereign power of the State, acting within the limitation of the Constitution,.

or by the several cities, towns, or other municipal bodies, in pursuance of lawful authority granted to them by the General Assembly." *McTwiggan* v. *Hunter*, 19 R. I. 265, 270. See, also, *Brown University* v. *Granger*, 19 R. I. 704.

The general power of the General Assembly over towns and cities is reviewed at great length in *City of Newport* v. *Horton*, 22 R. I. 196, and in *Horton* v. *City of Newport*, 27 R. I. 283, 293. In the latter case, the court said: "That a municipal charter is subject at all times to such change, modification, or repeal as the legislature shall see fit to impose is not only fully set forth in many of the cases cited, *supra*, but is very convincingly and strongly stated in *Philadelphia* v. *Fox*, 64 Pa. St. 169, wherein, at p. 181, it decides as follows: 'The sovereign may continue its corporate existence, and yet assume or resume the appointments of all its officers and agents into its own hands; for the power which can create and destroy can modify and change. Indeed, the legislature of this commonwealth, under the constitution could not by contract invest any municipal corporation with an irrevocable franchise of government over any part of its territory. It cannot alienate any part of the legislative power which, by the constitution, is vested in a General Assembly, annually convened.'"

(3)    The power of taxation is vested primarily in the state, and may be lawfully exercised by the subordinate political bodies of the state only in so far as and in the manner in which said power is delegated to them by the legislature. Up to this time, it has been the statute law in Rhode Island that in towns the taxing power shall be exercised by the qualified voters in town meeting assembled. But this has been only by virtue of express statutory authority. The General Assembly may provide that towns may exercise the taxing power in any other way that is deemed expedient provided no provision of the Constitution is violated.

Do said provisions of Article II of the Constitution as Amended require that taxes in towns be levied only in town meetings ? To so construe the constitutional provision

would be to read into it something which is not there.   It
is to be noted that Article II is entitled "Of the Qualifications
of Electors." It does not purport to fix the fiscal administra-
tion of municipal bodies in the state.   The only constitu-
tional provisions with relation to taxation are found in other
parts of the instrument:  .  .  . "the burdens of the state
ought to be fairly distributed among its citizens." Const.
Art. I, Sec. 2.   Express powers over taxation are given to
the General Assembly:  "The general assembly shall, from
time to time, provide for making new valuations of property,
for the assessment of taxes in such manner as they may deem
best.  .  .  . " Const. Art. IV, § 15.   A reasonable
interpretation of the provisions of Article II requires nothing
more than this:  "That if the Assembly shall require by
statute that taxes in a town shall be levied in a financial
town meeting, then in such a case, and only in such a case,
all the electors qualified to vote thereon must be allowed to
vote on all questions in such a legal town meeting, or legally
organized town meeting.   If the Assembly shall provide that
the taxes shall be assessed through the agency of another
body and the electors of the town are no longer empowered
by law to meet in town meeting to raise taxes and make
appropriations, there can be no legal town meeting or legally
organized town meeting of such qualified electors of the
town.   And if there can be no legal town meeting or legally
organized town meeting of such qualified electors, there can
be no questions in such a meeting to be voted on by the
electors.   And if there be no questions to be voted for in
such a meeting, the constitutional provisions have not been
violated.

   In the case of *In re Election of School Committee of the City
of Woonsocket,* 28 R. I., 629, the question was raised whether
the right given to registry voters by Article VII, § 1 of the
amendments, "to vote in the election of all civil officers and
on all questions in all legally organized town or ward
meetings" was not infringed by an act providing for the
election of the school committee by the city council of

Woonsocket. This court there held that this section of the constitution was not violated. The court said, at page 631: "Evidently the constitution has not been understood to guarantee a right to every elector to vote for every civil officer. The course of legislation and practice of election, which we have noted, have been both a contemporaneous and continuous interpretation that the right to vote for all civil officers means 'officers as by the laws of this State are or may be required.' It recognizes the right of electors to vote for all officers, who are to be elected by the people, except as provided, but it does not require that electors shall vote for all officers whose election, under the law, is not to be made by the people." And at page 632: "It is argued that if this construction be given it will allow elections to be withdrawn from the people. The question is not what may be done; but what the constitution requires. It requires certain officers to be elected by the people. It does not require other officers to be so elected. These are to be provided for by law. If unsatisfactory laws are made, the presumption is that the people will choose legislators who will make a change."

The right to vote for all civil officers and the right to vote on all questions in legally organized town meetings are found in the same phrase of the constitution and the same rule of construction is applicable to one as to the other. If the right to vote for all civil officers applies only to those officers whose election is required by law to be by the people, it is logical to hold that the right to vote on all questions in legal town meetings applies only to town meetings that may be required to be held by law. The effect of the decision *In re Election of the School Committee of the City of Woonsocket, supra,* is that we must look to other sections of the constitution to find what officers must be elected by the people, and those officers must be elected by all the voters. Likewise we must find in some other part of the constitution a requirement that town taxes shall be levied in a town meeting. As there is no such express provision it is entirely within

the province of the legislature to determine whether there shall be any "legally organized town meeting" for that purpose.

(2)    It may be suggested that, with relation to the personal property voter, the proviso in Article VII, § 1 of the Amendments, guarantees to him the right to vote on any proposition to impose a tax or for the expenditure of money, and that the only way in which he may exercise such right is in town meeting.    The proviso applies to the preceding right given to all registry voters to vote "on all questions in all legally organized town or ward meetings."    The purpose of a proviso is never to enlarge a right previously given, but on the contrary to limit it.    The effect of this proviso does not give the registry voter who has paid a tax on his property valued at $134 any greater right than he possesses under the broad right to vote "on all questions in all legally organized town or ward meetings."    It simply limits the right of the elector, who has merely registered and who has not paid the tax, to vote on all questions except propositions to impose a tax or for the expenditure of money.    If the provision without the proviso does not prohibit the legislature from depriving the qualified elector of the right to vote in a town meeting held for financial purposes, it cannot be said that the proviso has such an effect.    The proviso reads: "*Provided*, that no person shall at any time be allowed to vote . . . upon any proposition to impose a tax or for the expenditure of money in any town, or city, unless," etc. . . .    If the right to assemble in financial town meeting is guaranteed by this proviso to the qualified electors of a town, the same right must be held to exist in favor of the qualified electors of a city, in other words, the taxes in our cities would have to be levied and appropriations made in a general meeting of the qualified electors of the city.    No such necessity has ever been suggested.

The first question discussed above was directed to the point whether the proposed act limited the constitutional right of a property voter to vote on questions in town

meetings, and the second question now to be discussed involves a consideration of whether the proposed act limits any constitutional voting rights of the registry voter.

(4)    A reference to Section 4 of the proposed act shows that the members of the financial council are to be nominated and elected by the electors of the town of Warwick qualified to vote on any proposition to impose a tax or for the expenditure of money in said town.    The basic principle underlying this section is constitutional.    There can be no question raised as to the details of the method in which the election is to be carried out.    The legislature may generally pass such regulations with respect to the conduct of elections as to it seem proper and expedient.    The question is a narrow one and involves a consideration as to whether the members of the financial council are civil officers within the contemplation of this constitutional provision in whose election the registry voters must be allowed to vote.    This question has been considered in several decisions with reference to other cases. *In re Newport Charter*, 14 R. I. 655; *Wood v. Quimby*, 20 R. I. 482; *In re Election of School Committee of the City of Woonsocket*, 28 R. I. 629.    It can hardly be contended that the members of the financial council provided for in the proposed act are not civil officers.    In *State v. Crawford*, 17 R. I. 292, the court approved the following definition of civil officers:    "There is a common agreement that a civil officer has the characteristics of tenure, of definite term, of general duties as a part of the regular administration of the government, of right to emoluments, and of qualification by oath."    In the case of *Wood* v. *Quimby, supra*, the question was raised as to whether it was unconstitutional for the charter of the Apponaug Fire District to provide for the election of its officers by the taxpaying voters of the district. The court held that such a provision was entirely proper and used the following language:    "The term 'civil officers' primarily, if not solely, has reference to municipal and State officers, and we think it may well be doubted whether any of the officers provided for in said charter are 'civil officers'

2

within the legal signification of the term. . . . But, even admitting that the assessors and collector of said district are civil officers, they are clearly not such as are contemplated in the constitutional provision now under discussion; and this being so, it was perfectly competent for the General Assembly to provide that only the inhabitants of said district qualified to vote in town affairs on a proposition to impose a tax or for the expenditure of money should be eligible to vote and act at the meetings of the corporation." The court said immediately preceding the above quotation: · "We do not think this provision has any relation to a *quasi* public corporation. It relates in terms solely to the election of civil officers, and to other questions which may be voted on in 'legally organized town or ward meetings,' and we do not think it ought to be or can be properly extended by construction to include any officers who may be elected in a *quasi* public corporation."

The construction of the constitutional provision in the case of *Wood* v. *Quimby, supra,* was carried to its logical conclusion in the case of *In re Election of School Committee of the City of Woonsocket,* 28 R. I. 629, *supra.* We have discussed this case at some length in the consideration of the preceding question. The City Charter of the City of Woonsocket provided that the members of the school committee should be elected by the City Council. After holding that the members of the school committee are "civil officers" the court, p. 630, says: "The question then, is, do the words imply that every elector has the right to vote for all civil officers, so that all civil officers must be chosen by a vote of the people?

"Neither the words themselves nor the practice under them carry a necessary implication to that effect. The words are not 'a right to vote for all civil officers,' but 'in the election of all civil officers,' in town or ward meetings. They are entirely consistent with the interpretation that they give to all electors the right to vote for all officers who are to be so elected by the people under the constitution or by law, other than those specially excepted. . . . "

"In Public Laws, 1844, the first digest after the constitution, the act relating to the election of town officers, p. 300, provides that the electors shall annually 'choose and elect so many town officers as by the laws of this state are or shall be required' a provision which goes back to the Digest of 1719, and which has continued to the present time. It clearly implies that the electors are to elect only such officers as are required by law to be so elected. . . .

"Evidently the constitution has not been understood to guarantee a right to every elector to vote for every civil officer. The course of legislation and practice of election, which we have noted, have been both a contemporaneous and continuous interpretation that the right to vote for all civil officers means 'officers as by the laws of this state are or may be required.' It recognizes the right of electors to vote for all officers, who are to be elected by the people, except as provided, but it does not require that electors shall vote for all officers whose election, under the law, is not to be made by the people."

The reasoning of the court in the above case is directly applicable to the present question. The members of the financial council are not required under the proposed act to be elected by the people. They are to be elected by a very limited number of electors, namely, the electors qualified to vote on any proposition affecting the finances of the town. The section quoted in said case from the Digest of 1844 is found in Gen. Laws, 1909, Chapter 49, § 1: "The electors in each town shall annually, on their town election days, choose and elect as many town officers as by the laws of the state are or shall be required; that is to say" (enumerating a large number of town officers) "and all such other officers as by law are required in such town and as each or any town shall have occasion for." . . . The same provision is found in the Digest of 1822 in force before the adoption of the constitution, at page 258: "Sec. 1. *Be it enacted by the General Assembly, and by the authority thereof it is enacted,* That the freemen in each town shall annually, on their

town-election days, choose and elect so many town officers as by the laws of this State are or shall be required; that is to say: . . . " The phraseology of the two sections is identical with the exception that the word electors is substituted for the word freemen. This was rendered necessary, of course, by the change in the suffrage qualifications under the constitution.

It is not the question whether the General Assembly might provide for the election of the members of the financial council by all the electors of the town. The proposed act provides that they shall be elected by the electors of the town of Warwick qualified to vote on any proposition to impose a tax or for the expenditure of money. The office of financial councilmen under our law is a new civil office. It has never been created in any town in this state. The whole course of decision in this state is that registry voters under this section of the constitution have the right to vote for those officers only whose election is required to be by the people.

*In re the Newport Charter,* 14 R. I. 655, was decided before the adoption of the Bourn Amendment, so-called, in 1888. The section of the constitution under consideration as originally adopted contained the following proviso: "Provided that no person shall at any time be allowed to vote in the election of the city council of the City of Providence . . . unless he shall . . . have paid a tax," etc. A city charter was adopted for the City of Newport which provided for a city council to be elected by the taxpaying voters. The court held that the proviso applied only to the City of Providence and by implication preserved the right of registry voters in other cities to vote for city councils. The court said, at page 659: "It is to be remembered that the right of voting in the election of the city council of the City of Providence, as it had previously existed, was enlarged, not abridged, by the proviso; for, before the Constitution, the right was confined to freeholders and their eldest sons. Whereas, to limit the right of voting in the election of the city council of any city incorporated since the adoption of

the Constitution is, in effect, to abridge a preëxisting right; for the city council not only has power, newly given by charter, to impose taxes and make expenditures, but it succeeds the town council in the prudential management of town affairs; and in the election of the town councils registry voters participate on an equality with other voters."

The above case is clearly distinguishable from that now under consideration. If the proposed act vested in the members of the financial council any of the powers heretofore exercised by any officers for whom the registry voters have been entitled to vote, the above case might apply. It is however expressly provided in the proposed act that the town council shall continue to exercise all the powers and authority conferred upon the same by general and special laws. It is difficult to see how any rights of the registry voter have been impaired. If the proposed act goes into effect, the registry voter will cast his vote for the same officers, and for all of the same officers as he has done heretofore in the town of Warwick.

Upon a careful consideration of the constitutional provision as interpreted in the case of *In re Election of School Committee of the City of Woonsocket* we find no unconstitutional feature in connection with this phase of the question.

We find nothing in the proposed legislation which is in conflict with Article II of the Constitution, as amended by Article VII of the Amendments.

We therefore answer the question propounded to us in the negative.

CLARKE H. JOHNSON,
C. FRANK PARKHURST,
WILLIAM H. SWEETLAND,
WALTER B. VINCENT,
DARIUS BAKER.

PROVIDENCE, R. I., April 7, 1916.