[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
This matter is before the Court pursuant to R.I.G.L. §44-5-26 and § 44-5-27 upon plaintiffs' request that this Court grant temporary and permanent relief to the plaintiffs from an illegal, void and excessive tax assessment made by defendants against certain properties of plaintiffs'.
I. Travel of Case and Facts
The parties have stipulated to an extensive set of facts. (See Stipulation of Facts). The salient facts and travel of the case are as follow. The plaintiffs, Pawtucket Power Associates, et al. (hereinafter "PPA"), own and operate a cogeneration facility (hereinafter "Facility") located in the city of Pawtucket. PPA operates the Facility exclusively for the production of steam and electricity for sale pursuant to two private long-term contracts negotiated at arm's length. The Facility makes both steam and electricity in a sequential cogeneration process. The electricity produced at the Facility is sold exclusively at wholesale to New England Power Company (hereinafter "NEP") and the steam produced at the Facility is sold exclusively to Colfax, Inc.
On January 30, 1989 the Rhode Island Division of Taxation issued a declaratory ruling that PPA's ownership and operation of the Facility would cause PPA to be a "manufacturer" for Rhode Island sales and use tax exemption purposes pursuant to R.I.G.L. § 44-18-30(W). Then on February 3, 1989 the Rhode Island Public Utilities Commission (hereinafter "PUC") issued a declaratory judgment that PPA's ownership and operation of the Facility as set forth would not cause PPA to be considered a "public utility" subject to the authority of the Commission under Title 39 of the General Laws.
On January 21, 1991 PPA filed a notice of intention to bring in a property tax account to the Defendant, City of Pawtucket (hereinafter "City") pursuant to R.I.G.L. § 44-5-15. On March 14, 1991 PPA filed an account of its tangible property located within the City pursuant to R.I.G.L. § 44-5-16. On such return PPA claimed that their machinery and equipment qualified for the property tax exemption provided in R.I.G.L. § 44-3-3 (22) for new manufacturer's machinery and equipment. Rejecting PPA's claim of tax exemption, the City on May 29, 1991 taxed the property according to its normal taxation formula and issued a tax bill which was payable in installments. PPA paid two installments. The next installment is due December 15, 1991.
On July 1, 1991 PPA filed a timely complaint before this Court pursuant to R.I.G.L. § 44-5-26 and § 44-5-27 requesting both temporary and permanent relief from an illegal, void and excessive tax assessment made by the City against certain properties of PPA's. The matter is properly before this Court pursuant to § 44-5-27 which provides that a taxpayer alleging an illegal or void tax assessment is not first required to file an appeal with the local assessor rather, the taxpayer may invoke the equity jurisdiction of the superior court. R.I.G.L. 1956 (1989 Reenactment) § 44-5-27.
The threshhold issue before this Court is whether pursuant to § 44-3-3(22) the machinery is exempt from property taxation by the City. If the machinery is found not to be exempt from property taxation under § 44-3-3(22), the Court must then determine whether the provisions of § 44-3-18(3)(B) regarding the maximum assessment of cogeneration facilities is applicable to PPA and whether the assessment is therefore illegal, void and excessive.
II. Property Tax Exemption
It is well established that a municipality's ability to tax is limited by the power delegated by the state legislature. InRe Warwick Financial Council, 39 R.I. 1, 12-13, 97 A. 21 (1916). The Rhode Island Constitution provides that; "nothing contained in this Article shall be deemed to grant to any City or Town the power to levy assess, and collect taxes . . . except as authorized by the General Assembly." R.I. Const. art. XIII, § 5. Likewise, cities and towns must provide tax exemptions as required by statute. Accordingly, this Court must determine whether the City's decision to assess a property tax on PPA's machinery is in violation of any statutory provisions.
Section 44-3-3 (22) provides that the following machinery and equipment is exempt from property tax:
 New manufacturing machinery and equipment acquired or used by a manufacturer and purchased after December 31, 1974. Manufacturing machinery and equipment is defined:
 (a) As that machinery and equipment which is used exclusively in the actual manufacture or conversion of raw materials or goods in the process of manufacture by a manufacturer as set forth in subdivision (20) of this section . . .
R.I.G.L. 1956 (1990 Reenactment) § 44-3-3(22).
Subdivision (20) provides:
 [A] person is deemed to be a manufacturer within a city or town within this state if that person uses any premises, room, or place therein primarily for the purpose of transforming raw materials into a finished product for trade through any or all of the following operations: adapting, altering, finishing, making, and ornamenting; provided, however, that public utilities . . . shall be excluded from this definition.
R.I.G.L. 1956 (1990 Reenactment) § 44-3-3(20).
The parties have stipulated that all of the machinery and equipment located at the Facility and used by PPA in the production of steam and electricity for sale was purchased after December 31, 1974 as new items. (Fact Stipulation ¶ 5). The parties have also stipulated as to the process by which the Facility produces both steam and electricity: "Natural gas, oil and air are converted to heat energy, which is then converted both to electricity in a combustion turbine and in combination with water and other materials, to steam in a heat recovery steam generator; such steam is then both converted to electricity in a steam turbine and also used as a final product for sale." (Fact Stipulation ¶ 3). Therefore, this Court finds that PPA's machinery and equipment is used exclusively for the purpose of transforming raw materials (i.e. natural gas, oil, and air) into a finished product (i.e. steam and electricity) for trade pursuant to R.I.G.L. § 44-3-3 (22) and (20).
Subsection (20) of § 44-3-3 specifically excludes "public utilities" from the definition of "manufacturer." PPA contends that this Court should adopt the PUC's ruling that PPA's ownership and operation of the Facility will not cause PPA to be considered a public utility under Title 39 of the General Laws for purposes of state public utility regulation process. However, the case at bar does not involve issues within the PUC's administrative discretion. See R.I.G.L. 1956 (1990 Reenactment) § 39-1-1 to § 39-1-41. Rather, the issue before this Court relates to a statutory interpretation regarding local property classification and taxing authority which is a question of law.East Providence v. Public Utilities Comm., 566 A.2d 1305, 1307 (R.I. 1989). Therefore, the PUC's ruling that PPA will not be considered a public utility for regulation purposes is not binding on the issues before this Court.
PPA argues that the DOT's ruling exempting PPA's machinery from sales and use taxation under section 44-18-39(W) supports a conclusion that PPA falls within the property tax exemption pursuant to section 44-3-3(22). Such argument is without merit. The sales and use tax exemption of section 44-18-30(W) is not
substantially identical to the property tax exemption of section44-3-3 as PPA contends. Accordingly, the DOT's ruling is not relevant to the issue at bar.
PPA further contends that the findings of the Federal Energy Regulatory Commission (hereinafter "FERC") support a conclusion that PPA is not a public utility. Such contention is without merit. FERC certified the Facility's status as a "qualifying facility" as defined in 18 C.F.R. § 292, et seq. Qualifying facilities pursuant to 18 C.F.R. § 292.602 are exempt from utility rate regulation and from all state laws or regulations respecting electric utility rates. Such federal regulations have no significance regarding this Court's determination as the issue at bar has no relation to utility rate regulation.
Laws exempting property from taxation are to be strictly construed and in favor of taxation unless in their terms they disclose a clear intention to grant an exemption. AmericanHoechst Corp. v. Norberg, 462 A.2d 369 (R.I. 1983). Additionally, if doubt or ambiguity exists in a statute granting a tax exemption, such doubt must be resolved in favor of taxation. City of Providence v. Killoran, 447 A.2d 369, 371 (R.I. 1982). Title 44 of the General Laws fails to define "public utility." However, Title 39 of the General Laws which establishes the PUC defines "public utility" as follows:
 (7) every company operating or doing business in interstate commerce and in this state as a railroad, street railway, common carrier, gas, liquefied natural gas, electric, water, telephone, telegraph, and pipeline company, and every company owning, leasing, maintaining, managing, or controlling any plant or equipment or any part of any plant or equipment within this state for generating, manufacturing, producing, transmitting, distribution, delivering, or furnishing natural or manufactured gas, steam, electrical, or nuclear energy, heat light or power directly or indirectly to or for the public . . . and provided further that the term "public utility" shall not include any company; (i) producing or distributing steam or heat from a fossil fuel fired cogeneration plant located at the University of Rhode Island South Kingston, Rhode Island . . .
R.I.G.L. 1956 (1990 Reenactment) § 39-1-2(7) (emphasis added).
As stipulated in the facts, PPA operates the Facility exclusively for the production of steam and electricity for sale pursuant to two private long-term contracts. (Fact Stipulation ¶ 3). Steam produced at the Facility is sold exclusively to Colfax, Inc. which is consumed in manufacturing processes at Colfax's industrial fuel oil manufacturing plant. (Fact Stipulation ¶ 4 
6). Electricity produced at the Facility is sold exclusively at wholesale to NEP which in turns provides such electricity for sale to the public. In addition, for the year ending December 31, 1990, 100% of the Facility's income was derived from the sale of electricity sold to NEP by PPA. (Fact Stipulation ¶ 20). Furthermore for the first six months of 1991, no less than 80% of the Facility's income was derived from the sale of electricity by PPA to NEP. (Fact Stipulation ¶ 21). Accordingly, PPA produces electricity "indirectly to or for the public" from its sale of electricity to NEP thereby falling within the meaning of "public utility" as set forth in R.I.G.L. § 39-1-2(7) and R.I.G.L. §44-3-3(20). As a result, this Court finds that PPA is not entitled to the property tax exemption set forth in R.I.G.L. §44-3-3(22).
III. Valuation of Cogeneration Energy Systems
This Court must now consider whether the provisions of R.I.G.L. § 44-3-18(3)(B) respecting the maximum assessment of cogeneration facilities is applicable to the Facility thus causing the assessment to be illegal, void and excessive. Section44-3-18(3)(B) provides:
 Cogeneration . . . systems in an existing or newly constructed residential or nonresidential building shall be assessed at no more than the value of the conventional heating, cooling, or energy production capacity that would otherwise be necessary to install in the building.
R.I.G.L. 1956 (1988 Reenactment) § 44-3-18(3)(B).
The statute defines "cogeneration system" as "a facility which generates electricity and steam or other useful forms of energy which are used for commercial, industrial, heating or cooling purposes; and not primarily engaged in the generation or sale of electric power, other than the power generated at the cogeneration facility." R.I.G.L. 1977 (1988 Reenactment) §44-3-18(3).
The parties have stipulated that PPA operates the Facility exclusively for the production of steam and electricity. (Fact Stipulation ¶ 3). The steam produced by PPA is consumed by Colfax Inc. for industrial purposes. (Fact Stipulation ¶ 6). Furthermore, the electricity sold by PPA to NEP is power generated at the facility. (Fact Stipulation ¶ 4). It is well settled that statutes should be given their plain and ordinary meaning. State v. Gonsalves, 476 A.2d 108 (R.I. 1984). PPA certainly falls within the plain and clear meaning of "cogeneration system" as set forth in § 44-3-18(3). Accordingly, this Court finds that the City's assessment is illegal and excessive because it exceeds the maximum assessment permissible for "cogeneration systems" pursuant to R.I.G.L. § 44-3-18(3)(B).
Where a tax assessment is determined to be illegal, the excessive tax paid is subject to a remittance. Oster v.Tellier, 544 A.2d 128, 132 (R.I. 1988). PPA is therefore entitled to a refund for the excessive tax they paid to the City on June 11, 1991 and on August 15, 1991. As to the third installment due to the City on December 15, 1991 PPA is entitled to an adjustment consistent with the rulings in this decision.