Hugh C. CABANA et al.

v.

Theodore C. LITTLER, Tax Assessor of the City of Providence.

No. 90–407–Appeal.

Supreme Court of Rhode Island.

July 7, 1992.

Bruce E. Hodge, East Providence, for plaintiff.

Ronald W. DelSesto and Barbara L. Bennett, Updike, Kelly, Spellacy & DelSesto, Providence, for defendant.

## OPINION

MURRAY, Justice.

The plaintiffs Hugh C. Cabana and Shirley A. Cabana, are Providence ratepayers subject to a supplemental tax assessed by the defendant Theodore C. Littler, Tax Assessor of the City of Providence. Both parties appeal from a Superior Court judgment entered after a nonjury trial on a stipulated set of facts and exhibits. The defendant appeals the judgment awarding recovery from an illegal tax to the original 211 petitioners. The plaintiffs appeal the

judgment denying recovery to alleged class members.

This case concerns taxes imposed by the city of Providence (city) during fiscal year 1980–81 (FY 1980). On July 3, 1980, the Providence City Council (city council) passed an ordinance levying a tax on Providence ratepayers of not less than $74 million and not more than $76 million for FY 1980. The defendant tax assessor thereafter caused an assessment and apportionment of taxes against the city's ratepayers in the sum of $75,111,559.65 based on values assessed as of December 31, 1979. The tax assessor subsequently certified the taxroll and transmitted it to the tax collector for purposes of collection.

On February 5, 1981, Mayor Vincent A. Cianci (the mayor) requested that the city council authorize a second levy on city property for FY 1980. The city council passed a resolution authorizing a second levy, and on March 6, 1981, the mayor approved a city council resolution authorizing the city solicitor to appear before the General Assembly to urge passage of an act authorizing the city to impose a supplemental tax on city property. This proposed legislation was introduced in the General Assembly on March 10, 1981, as Bill No. 81–H5899, but the Legislature did not vote on the bill because of questions concerning the legality of a second tax. To resolve these questions, the General Assembly requested this court to render an advisory opinion on the constitutionality of the supplemental tax. We declined to render an opinion due to pending litigation in Superior Court. *Opinion to the House of Representatives*, 433 A.2d 944 (R.I.1981). The General Assembly subsequently did not enact any legislation authorizing the city to levy a second tax.

On March 13, 1981, the mayor approved an ordinance for collection of a second tax for a sum not less than $14,399,696 and not more than $16,500,000 (supplemental tax). Thereafter, on May 1, 1981, the defendant tax assessor certified a net levy of $15,121,-289.92 on Providence ratepayers. The tax assessor made no new assessment for this tax and based the supplemental levy on the previously used 1980 tax rolls and the December 31, 1979 assessment.

On June 26, 1981, plaintiffs Hugh C. Cabana and Shirley A. Cabana filed a petition for relief from excessive tax assessment with respect to the supplemental tax, and from June 1981 to August 1981 a total of 211 taxpayers filed 134 such petitions. On August 21, 1981, the Cabanas filed a motion to consolidate the 134 petitions and a motion to certify plaintiffs as a class of all ratepayers subject to the supplemental tax. On August 27, 1981, a Superior Court justice granted the Cabanas' motion to consolidate but passed the motion to certify class. On August 31, 1981, the statute of limitations for challenges to the supplemental tax levy expired pursuant to G.L.1956 (1980 Reenactment) § 44–5–27. The following year, on May 28, 1982, plaintiffs filed a motion to amend the petition and a second motion to certify class. On June 3, 1982, a second trial justice denied the motion to certify class.

No further action was taken on the motion until August 10, 1983, when the parties entered a stipulation that the "motion to certify as a class may pass." The status of the case after this stipulation is ambiguous, but two years later, on August 7, 1985, the parties appeared in an unrecorded chambers conference before a third trial justice. Four and one half years after this conference, on January 16, 1990, the third trial justice issued an order granting the Cabanas' motion to certify class. The January 16, 1990 order was thereafter superseded by a nearly identical order dated June 13, 1990. The only difference between the two orders is that the June 13, 1990 order omits the words *nunc pro tunc.*

On August 21, 1985, two weeks after the unrecorded chambers conference, defendant and plaintiffs entered into a stipulation of facts and exhibits. Stipulated fact No. 21 states:

"21. Between June, 1981 and August 31, 1981, 211 taxpayers filed 134 petitions challenging the legality of the supplemental tax. Such petitions were consolidated into one Amended Complaint now before the court. *Such Amended*

*Complaint is now before the court through persons who were subject to pay the supplemental real estate and excise tax levy as a class action."* (Emphasis added.)

This stipulation was entered without an independent court determination that the action was suitable for class action.

The parties presented the case at a nonjury trial on the stipulated facts and exhibits, briefs, and oral arguments. On July 6, 1990, the trial justice entered an order granting recovery to the 211 original petitioners but denying recovery to nonrepresentative class members. In the written decision accompanying the order, the trial justice first determined that the supplemental tax was illegal. The trial justice based this finding on four grounds: (1) that the tax was not authorized by the general taxing statutes, G.L.1956 (1988 Reenactment) § 44–5–1, § 44–34–1, and G.L. 1956 (1991 Reenactment) § 45–2–2; (2) that the tax exceeded authority granted in § 44–5–23; (3) that the city failed to comply with notice requirements of § 44–5–15; and (4) that the tax failed to comply with P.L.1969, ch. 120, and § 21–1 of the Providence city ordinances. Having found the supplemental tax illegal, the trial justice awarded a refund of tax paid plus statutory interest to the original 211 petitioners but denied monetary relief under principles of equity to nonpetitioning ratepayers. In denying relief to nonpetitioning ratepayers, the trial justice considered the city's good faith in levying the tax and the undue burden an award to nonpetitioning ratepayers would have on the city.

Both sides appeal the judgment. The tax assessor appeals the judgment in favor of the original 211 petitioners, and more specifically, the finding that the supplemental tax was illegal. The Cabanas appeal the judgment limiting the remedy to only the original 211 petitioners.

I

The first issue before the court is the legality of the supplemental tax. The tax assessor makes three substantive arguments why the supplemental tax is legal.

First, the tax assessor claims that the Rhode Island Constitution and general taxing statutes authorize the city to levy a second tax in a single fiscal year. Second, the tax assessor asserts that the city's authority to amend its budget implies the city's authority to levy an amended tax. Third, the tax assessor claims that public policy mandates that the city be allowed to amend its tax levies.

The tax assessor first asserts that the General Laws authorize a town or municipality to levy a second tax during a single fiscal year. The tax assessor claims that the supplemental tax satisfies the general requirements of § 45–2–2 and the specific requirements of § 44–5–1. In response, petitioners argue, *inter alia,* that the supplemental tax was not authorized by law because it violated P.L.1969, ch. 120, and Providence City Ordinance § 21–1.

A municipality's ability to tax is limited to the extent that such power is delegated by the State Legislature. *In re Warwick Financial Council,* 39 R.I. 1, 12–13, 97 A. 21, 25 (1916). This restriction is founded in article 13, section 5, of the Rhode Island Constitution which provides that: "[n]othing in this article shall be deemed to grant any city or town the power to levy, assess and collect taxes or borrow money, except as authorized by the general assembly." The statutory authority under which the General Assembly allows towns and cities to levy taxes is chapter 5 of title 44, and chapter 2 of title 45. Section 45–2–2 provides the general authority under which a city or town can raise money through taxation.

"Power to tax property.—Towns may raise by a tax on real or personal estate, or on both, such sums of money as shall be necessary to pay town debts, or to defray the charges and expenses of the town hereinafter set forth; and may include the town's proportion of any state tax which may be assessed, in the assessment of the town tax, and pay the tax out of the town treasury; provided, the tax be voted on at a legal meeting of the electors of the town." Section 45–2–2.

Section 44–5–1 provides the specific powers and limitations of town electors to levy and assess local taxes.

> "Powers of town electors to levy—Date of assessment of valuations.—The electors of any town qualified to vote on any proposition to impose a tax or for the expenditure of money, when legally assembled, may levy a tax for the purposes authorized by law, on the ratable property of the town, either in a sum certain, or in a sum not less than a certain sum and not more than a certain sum." Section 44–5–1.

In addition to the relevant statutes enacted by the General Assembly, a taxing authority must abide by its own ordinances and local laws. Providence City Ordinance § 21–1 codifies P.L.1969, ch. 120, and requires that taxes owed to the city of Providence must be due no later than thirty days following the beginning of each fiscal year. Section 21–1 further establishes the city's fiscal year as running from July 1 to June 30 of the next calendar year. These two provisions require the city of Providence to make a tax due no later than July 31 of the fiscal year for which it is due.

The supplemental tax directly contravened this city ordinance. Section 21–1 requires that any tax levied by the city for FY 1980 had to be due no later than July 31, 1980. The supplemental tax was due on May 1, 1981, thereby exceeding the July 31, 1980 deadline by nine months. This violation of the city's own ordinance makes the tax illegal.

■ The tax assessor responds that the city did not violate § 21–1 because the statutory time limitation in § 21–1 is directory and not mandatory. The tax assessor asserts that the ordinance is discretionary because it contains no sanction for failure to comply with the time limitation and that the city's failure to comply with a directory statute does not make the tax illegal.

■ This reasoning conflicts with the law of Rhode Island. Negative words in a grant of power should never be construed as directory, and where an affirmative direction is followed by a negative or limiting provision, the affirmative direction be-

comes mandatory. *Washington Highway Development Inc. v. Bendick*, 576 A.2d 115, 116 (R.I.1990); *Providence Teachers Union, Local 958 v. McGovern*, 113 R.I. 169, 177–78, 319 A.2d 358, 363–64 (1974); *Sutherland Statutory Construction*, § 57.09 at 26–27 (Singer 5th ed. Temporary Pamphlet 1991); *but see Town of Tiverton v. Fraternal Order of Police, Lodge #23*, 118 R.I. 160, 372 A.2d 1273 (1977). The relevant portion of § 21–1 provides that "[t]axes shall be due and payable on a day fixed by resolution *but not later than* the 30th day following the beginning of each fiscal year." (Emphasis added.) The term "but not later than" is a limiting provision to the city's affirmative power to tax and is therefore mandatory. Consequently the city must abide by time requirements in § 21–1, and failure to comply with these requirements makes a tax illegal.

■ The tax assessor's second claim is that authority granted to municipalities to amend their budgets pursuant to G.L.1956 (1988 Reenactment) § 44–35–8 includes an implicit delegation of authority to levy additional taxes. In making this argument, the tax assessor asserts that it is pointless for the General Assembly to authorize a municipality to amend its budget without also authorizing the municipality to amend its levy. The tax assessor then characterizes the supplemental tax as an amended tax enacted pursuant to an amended budget.

Section 44–35–8 requires public notice for any amendment increasing tax expenditures by more than 5 percent in a budget year and serves to inform the public of changes in municipal outlays. This statute specifically uses the term "expenditures" and not the terms "levy" or "assessment," and it is not a back door provision through which a taxing authority can provide notice of additional taxes. If the Legislature intended notice provisions in § 44–35–8 to authorize a municipality to levy additional taxes, it would have used the term levy or assessment in the statute. The absence of these words indicates a contrary intent, and the authority granted to a taxing authority to amend its budgets pursuant to

§ 44–35–8 does not imply the authority to amend a levy.

■ The tax assessor's final argument is that the city should be allowed to levy a supplemental tax as a matter of public policy. The tax assessor explains that the city faced a budget deficit at the end of FY 1980 and that the city was prohibited from deficit spending by the P.L.1945, ch. 1665. The tax assessor further notes that the city had a continuing obligation to provide services despite its shortage of funds and that the city levied a second tax to meet its obligations. The tax assessor admits that the supplemental tax was not in strict compliance with taxing statutes but avers that the money was used to provide only necessary services and should therefore be declared legal as a matter of public policy. The city provides no authority supporting this proposition.

■ The power to tax represents one of the great powers granted by the people of Rhode Island to their government. This power is not absolute, however, and authority to tax is granted only by unequivocal instructions found in the Rhode Island Constitution and in statutes enacted by the Rhode Island legislature. Rhode Island courts must assiduously protect the people from abuse of the government's taxing authority by requiring strict adherence to these unequivocal instructions, and expeditious measures not in conformance with these limitations, no matter how well intentioned, cannot be substituted for compliance. The record provides no unique situation, other than the city's fiscal turmoil, to explain the need for a tax. Under these circumstances we will not carve out a public policy exception for the city's failure to comply with the taxing statutes.

Accordingly, for the reasons stated, the supplemental tax was illegal. The defendant's appeal is denied and the order awarding relief to the 211 petitioners is affirmed.

## II

The second issue before the court is plaintiff's appeal from the judgment denying relief to nonpetitioning ratepayers. The plaintiffs make three arguments why nonpetitioning ratepayers are entitled to relief. First, plaintiffs assert that the trial justice's decision wrongfully destroyed a stipulated and properly constituted class of Providence ratepayers subject to the supplemental tax. Second, plaintiffs assert that the statutory remedy for rebate of an illegal tax is exclusive, mandatory, and not subject to principles of equity. Finally, plaintiffs assert that the trial court abused its discretion and committed errors of law when it denied recovery to all nonpetitioning ratepayers.

■ The class action provides an exception to the traditional confrontation between a plaintiff and a defendant by allowing the named-class plaintiff or named-class defendant to represent interests of others with similar claims who are absent from the court. To protect the rights of such absent parties, the court takes on a heightened role throughout the litigation. Among the responsibilities it assumes are making determinations of whether notice to all proposed class members is required, whether the class should be further subdivided, and whether a settlement proposal benefits the entire class. Additionally the court must continually monitor the adequacy of representation on behalf of the entire class by the named representative and the attorney representing the class.

■ The court's first active role in the litigation is the hearing on class certification. The hearing should be held as soon as practicable and is a determination as to whether the proposed suit is maintainable as a class action and whether the suit satisfies the requirements of Rule 23 of the Superior Court Rules of Civil Procedure.[1]

---

1. Rule 23 of the Superior Court Rules of Civil Procedure was amended by a Supreme Court order, dated and effective April 17, 1991. The amended rule is identical to Rule 23 of the Federal Rules of Civil Procedure. At the time the instant suit was filed Rule 23(a) provided: "Class actions.—(a) *Representation.* If persons constituting a class are so numerous as to make it impracticable to bring them all

The hearing must be on the record and may not be substituted, as in the instant case, by an unrecorded chambers conference. The party pleading class action bears the burden of proof. This burden is light, but requires a showing that (1) there are a sufficient number of class members to make joinder impracticable, (2) there are common legal or factual issues which can be efficiently adjudicated by the court on a classwide basis, (3) the claims of the chosen representative are typical of those of the members of the class, and (4) the chosen representative and attorney will vigorously and adequately represent the interests of all class members. *See generally* Dickerson, *Class Actions: The Law of 50 States*, § 1.01[1] (1988).

■ In the instant case the parties entered a stipulation that plaintiffs represent a class of Providence ratepayers subject to the supplemental tax prior to any judicial determination that plaintiffs represent a certified class. In adjudicating the case, the trial justice felt bound by this stipulation even though he doubted that plaintiffs were properly certified as a class. Although a court is generally bound by a stipulation of facts, parties cannot take away the court's responsibility to make conclusions of law and other independent findings. *Armstrong v. Polaski*, 116 R.I. 661, 360 A.2d 558 (1976).

■ A finding by the court that a class action will fairly ensure the adequate representation of alleged parties is a condition precedent to the maintenance of a class action. The parties may not usurp this power from the court nor can the court abdicate this responsibility. The parties may not stipulate the existence of a class in lieu of an independent judicial determination made after an on-the-record hearing, and the trial court improperly bound itself to the stipulation. Nevertheless, although the trial court was not bound by the stipulation of class certification, the trial court did not err in prosecuting the suit as a class action if the record reveals sufficient

before the court, such of them, one or more, as will fairly insure the adequate representa-

evidence showing that plaintiffs represent a certified class.

The only evidence of class certification in the record is an order entered January 16, 1990, certifying plaintiffs as a class. There are three problems, however, with this order. First, there are no supporting findings of fact and no transcript from the hearing on class certification. Second, there is no determination whether the original complaint could have been amended to include nonpetitioning ratepayers as putative class members after the statute of limitations for filing a petition for relief from excessive tax assessment expired. Finally, the January 16, 1990 order certifying plaintiffs as a class was not entered until eight-and-one-half years after the original motion to certify class was filed.

■ The January 16, 1990 order is a pro forma statement granting plaintiffs' motion to certify class and defining the class as "all individuals and entities subject to real estate, personal property and excise taxes as identified and specified in a Supplementary Property Tax List dated May 1, 1981." There are no accompanying findings of fact, and more importantly, there is no record or transcript from the hearing on class certification.

■ The standard of review on appeal from a trial justice's decision to certify a class is the same as the standard of review of findings of fact made by a trial justice sitting without a jury. The finding is accorded great deference and will not be disturbed unless the trial justice misconceived material evidence. *Pereira v. Tellier*, 583 A.2d 523, 524 (R.I.1990); *Smith v. Boyd*, 553 A.2d 131, 134 (R.I.1989). In the instant case, however, there is a total failure of proof. There is no legal evidence supporting the finding, and the absence of such evidence is an error of law reviewable on appeal. *McCoy v. Cataldo*, 88 R.I. 330, 336, 148 A.2d 267, 270 (1959) (discussing standard of review under workmen's compensation statute); *William H. Haskell Mfg. Co. v. Smith*, 72 R.I. 161, 162, 48 A.2d 406, 407 (1946) (discussing standard of re-

tion of all may, on behalf of all, sue or be sued."

view under workmen's compensation statute). Accordingly, we find the order certifying plaintiffs as a class to be in error and will independently review plaintiffs' motion to certify class.

In reviewing plaintiffs' motion for class certification, we first note that a taxpayer suit can be maintained as a class action despite the exclusive statutory remedy for an illegal tax provided in § 44–5–26 and § 44–5–27. *Johnston Businessmen's Association v. aaRussillo*, 108 R.I. 257, 260–61, 274 A.2d 433, 435–36 (1971); *see also CIC–Newport Associates v. Stein*, 121 R.I. 844, 403 A.2d 658 (1979). The suit can be maintained in equity and under Rule 23 but requires proper pleading in compliance with Rule 23.

Rule 23 requires the class proponent to make a timely motion to certify the suit as a class action and to present evidence from which the court can conclude that class-certification requirements are met. *See Janicik v. Prudential Insurance Co. of America*, 305 Pa.Super. 120, 129, 451 A.2d 451, 454 (1982). The initial burden is not heavy but requires more than mere conjective and conclusory allegations. *Id.* at 130, 451 A.2d at 455. One of the reasons for this light burden is that an initial determination of class certification is not final. Rule 23(d) grants the court power to subdivide, modify, or decertify the class at any time prior to judgment and serves as a vehicle through which the court can change its initial determination as the case develops. Additionally, the low threshold allows the class proponent to meet its burden at an early stage so as to alert all parties that the suit will be litigated as a class action. The rule does not state when this burden must be met, but Federal Rule 23(c)(1) codifies the majority view that certification should be determined as soon as practicable. Although plaintiffs' suit is not governed by the federal rule, we find that the time guidelines in the federal rule apply to the instant suit. A court's right to modify its order granting class certification at any time up to final judgment and the importance of posturing a suit as a class action at an early stage

contemplate that determination of class certification will be made as soon as practicable.

Applying this principle, we find that plaintiffs failed to meet their burden of proof to certify class as soon as practicable. The evidence supporting a determination of class certification was available to plaintiffs at the outset of the action. The plaintiffs did not zealously and diligently prosecute the case in its initial stages as evidenced by their failure over a eight-and-one-half-year period to satisfy certification requirements. The pleadings at the third hearing on class certification made no new allegations that were not before the court at previous hearings. Only after reinitiating dormant litigation and finding a third justice willing to enter a pro forma order nearly a decade after the initial pleading were plaintiffs certified as a class. This delay is unexcused and violates the intent of Rule 23. Consequently plaintiffs' motion to certify class is denied, and only the 211 petitioners from the consolidated petition are before the court.

Although plaintiffs do not constitute a certified class, the 211 original petitioners are entitled to relief. The plaintiffs correctly assert that § 44–5–30 and § 44–5–31 provide the exclusive statutory remedy for an illegal tax and require that the court enter judgment for the petitioner for the sum illegally taxed plus statutory interest and costs. Accordingly, the 211 original petitioners are entitled to the judgment entered in the Superior Court order.

The plaintiffs' final claim that the trial justice abused his discretion in denying recovery to nonpetitioning class members is moot. As stated earlier, the instant suit is not a class action; therefore, the nonpetitioning taxpayers are not before the court. The trial justice did not abuse his discretion in denying relief to nonpetitioning ratepayers, and the plaintiffs' appeal is denied.

For the reasons stated, the plaintiffs' and the defendant's appeals are denied and dismissed. The case is remanded to the Superior Court with instructions to vacate the order certifying the plaintiffs as a class

and to enter an order denying the plaintiffs' motion for class certification.