DECISION
This matter is before the Court on Plaintiffs claim that the Defendant Tax Assessor illegally assessed taxes on Plaintiffs property. The Plaintiff seeks a refund of all taxes collected.
 Facts/Travel
The parties have submitted to this Court an Agreed Statementof Facts which, in relevant part read as follows;
 "Plaintiff Carol A. Cummings, at all relevant times hereto was the owner of ratable real estate in the town of Middletown. See Exhibit 1. The Town of Middletown Tax Assessor, Defendant William Shorey, conducted a townwide revalutation of all taxable real estate pursuant to R.I.G.L. § 44-5-11 which was implemented with the December 31, 1989 assessment. The Defendant Tax Assessor has not certified in writing to the State of Rhode Island Department of Administration that said revaluation was completed. The Defendant Tax Assessor has corresponded to the State of Rhode Island Department of Administration his position with regard to certifying the completion of the revaluation. The valuations of Plaintiffs property . . . are the true and accurate valuations of said property for the respective tax years shown." See Exhibit 2.
"The Plaintiff alleges that the Town's December 31, 1989 revaluation and the resultant assessment against property in the Town exceeded its fall and fair cash value in violation of G.L. § 44-5-11." Plaintiffs Memorandum. The Plaintiff further alleges that the Tax assessor never certified to the Department of Administration that the 1989 town wide revaluation is complete as is required by § 44-5-11. Finally, Plaintiff claims that the Town's tax roll has not been properly certified, thereby violating G.L. § 44-5-22. The Plaintiff first sought relief from the Middletown Board of Tax Appeals and, after this unsuccessful attempt, Plaintiff commenced the instant action.
 Standard of Review
"The Rhode Island Legislature authorizes municipalities to levy taxes on real estate. which first must be assessed at its full and fair cash value, or at a uniform percentage thereof, not to exceed 100 percent." Nos Limited Partnership v. Booth,654 A.2d 308, 310 (R.I. 1995) quoting G.L. 1956 (1988 Reenactment) § 44-5-12. Full and fair cash value has been defined by the Rhode Island Supreme Court as fair market value. Allen v. BondedMunicipal Corp., 4 A.2d 249, 251 (R.I. 1938).
In any challenge to the assessment of one's property for tax purposes, the assessor must first present his or her conclusion as to the fair market value and procedure used to arrive at such value for the subject property. "Absent proof to the contrary, it is presumed that tax assessors perform their official duties properly, and this presumption imports legality to the assessed valuations." Lowry v. Faraone, 500 A.2d 950, 952 (R.I. 1985) (citing Kargman v Jacobs, 411 A.2d 1326, 1332 (1980)).
If the taxpayer challenges either the legality of the assessment or claims that the assessor used an inappropriate fair market value of the subject property, the burden of proof is on the taxpayer to prove his contention that the tax assessor has set a value on the property that is greater than its full and fair cash value. Nos Limited Partnership, 654 A.2d at 310;Burriliville Racing Association v. Tellier, 574 A.2d 749, 754 (R.I. 1990).
 Fair Cash Value or Uniform Percentage
"All property liable to taxation shall be assessed at its full and fair cash value, or at a uniform percentage thereof, not to exceed one hundred percent (100%) to be determined by the assessors in each town or city." G.L. § 44-5-12 (1956) (1995 Reenactment, "Full and fair cash value" means that price the property would probably bring in a transaction in a fair market between a willing seller and a willing buyer. Allen v. BondedMun. Corp., 153 A.2d 249 (R.I. 1938); Rosen v. Restrepo,380 A.2d 960 (R.I. 1977). In determining the fair market value of ratable property an assessor is not bound by any particular formula; he is exercising a discretionary act Kargman v. Jacobs, 325 A.2d 543
(R.I. 1974).
The Plaintiff first argues that the "Town of Middletown has engaged in a pervasive pattern of illegal taxation [through] systematic assessments in excess of 100% of full and fair cash value." Plaintiffs Memorandum at 5. In support of this argument, the Plaintiff offers a compilation of the ratios between sale prices of single family residences and the assessed valuations.See Exhibit 20. The Plaintiff asserts that in each year the property assessment exceeded the sale price. Therefore, Plaintiff concludes that the properties were overvalued.
The Defendant counters, arguing that, because the Plaintiff "has stipulated that the values assessed against her properties by the defendant were `true and accurate' valuations (Agreed Statements of Facts, No. 21), she has no further possible argument that R.I.G.L. § 44-5-12 was violated by the assessment on her properties. (Emphasis included by Defendant) (Defendant's Memorandum at 3.) It is the Defendant's position that the statutory language of § 44-5-12 proffers twoalternate measures of property value. "The statute requires tax assessors to assess ratable property `at its full and fair cashvalue, or at a uniform percentage thereof.'" (Defendant's Memorandum at 4 citing R.I.G.L. § 44-5-12) (emphasis added
Therefore, Defendant argues, by stipulating to the accuracy of the full and fair cash value, the valuation option of "uniform percentage" is inapplicable. Defendant's Memorandum at 5.
One need not look further than the legislative history to discover the viability of Defendant's argument. "The `full and fair cash value' standard remained unchanged until 1965, when the General Assembly . . . amended G.L. 1956 § 44-5-12, by its enactment of P.L. 1965, ch. 115, § 1, so that, from 1965 on, tax assessors could assess all property liable to taxation at its full and fair cash value or at a uniform percentage thereof.
(Underline added) Rosen v. Restrepo, 380 A.2d 960 (R.I. 1977). This amendment illustrates the legislature's intent to provide tax assessors with an alternative scheme by which to measure property value.
In response, Plaintiff argues that is the assessment process
she challenges, not the adjusted valuations. She claims, "the fatal flaw in the defendant's argument is that he ascribes a much too narrow interpretation to the word `assessment." Citing the Rhode Island Supreme Court, Plaintiff argues "the word `assessment' does not mean the value placed on property on a particular date by an official for the purpose of taxation. Rather, the term `assessment' refers to the `entire plan or statutory scheme' for the imposition and collection of taxes."Plaintiff's Reply Memorandum at 2, quoting deZahara v. Weiss,516 A.2d 879, 880 (R.I. 1986). citing Maggiacomo v. DiVienzo,122 R.I. 615, 619 (R.I. 1980).
Despite Plaintiff's protestations, this Court remains convinced that when she stipulated to the value of her property., Plaintiff gave her stamp of approval not only on the values assigned, but the process utilized. The Plaintiff has failed to satisfy her burden by proving to this Court that her property was overassessed or that the Tax Assessor acted illegally.
 Certificaton
The Plaintiff's second argument is that the Tax Assessor violated § 44-5-11 (b) by not certifying, in writing to the State Department of Administration that the 1989 revaluation is complete. Plaintiff's Memorandum at 7. See also Agreed Statementof Facts, no. 3. The plaintiff therefore, seeks the refund of her money "illegally collected."
The Rhode Island General Laws provide:
 "The assessors of the respective aides and towns shall
certify in writing to the department of administration . when the revaluation is completed." G.L. § 44-5-11 (b) (1956) (1998 Reenactment).
 "The tax levy shall be applied to the assessment roll and the resulting tax roll certified by the assessors to the town clerk, town treasurer, or tax collector, as the case may be, not later than the June 15 next succeeding, G.L. § 44-5-22
(1956).
In accordance with the aforementioned sections, the Middletown Town Council passed yearly resolutions each of which contains the following language; "[t]he Tax Assessor shall on thecompletion of said assessment date, certify and sign the same and deliver to and deposit the same in the office of the Town Clerk." Each resolution also contains a date by which the certified and signed assessment is to be delivered.
By his own admission, the Tax Assessor has not yet certified the 1989 assessment. Agreement of Facts, no. 3. Further, examination of those assessment which he did certify indicates that they were completed after the due date stated in the town resolution. The question plaguing this Court, therefore, is whether tardiness and in one case lack of certification, is fatal to the Defendant's ability to collect the taxes assessed against this Plaintiff.
Rhode Island law, at first glance, appears to muddy the waters on this question because there seem to be conflicting messages therein. In 1921, the Rhode Island Supreme Court addressed a very similar issue when it decided Rives v. Taylor,113 A. 113 (R.I. 1921). In Rives, the assessment of the tax was unremarkable except for the time of completing and filing the tax roll. The governing ordinance, at that time, required the roll to be completed and certified on or before June 25, 1919. In this case, it was not deposited in the clerk's office until September 6, 1919. The Court cited Pendleton v. Briggs, 37 R.I. 352,92 A. 1024 which stated:
 "An action for the recovery of a town tax cannot be defeated by mere irregularities which do not go to the jurisdiction of the assessors or deprive the defendant [taxpayer] of some substantial right. It does not seem to us to be material to the taxpayer when the board of assessors performs its work, provided there is nothing done or omitted which deprives the defendant of some substantial right"
Finding no deprivation of substantial rights, the Court held for the town.
In contrast, more recently in Cabana v. Littler, 612 A.2d 678
(R.I. 1992)[1] the Rhode Island Supreme Court found a supplemental tax to be illegal because the date on which the tax was due was in direct contravention of the city ordinance. The Court found the time restriction stated in the Providence City Ordinance was mandatory and not directory. Providence ordinance § 21-1 required that "any tax levied by the city for FY 1980 had to be due no later than July 31, 1980. The supplemental tax was due on May 1, 1981, thereby exceeding the July 21, 1980 deadline by nine months." Cabana at 683. The tax assessor argued that because there was no penalty for failure to comply with this time limitation, the statute was directory rather than mandatory. The Supreme Court however, did not agree. "This reasoning conflicts with the law of Rhode Island. Negative words in a grant of power should never be construed as directory, and where an affirmative direction is followed by a negative or limitingprovision the affirmative direction becomes mandatory. Cabana at 683 [citations omitted].
In the case presently before this court contrary to the Defendant's assertion, the fact that the ordinance does not contain negative limiting language does not render Cabana
irrelevant. To the contrary, the ordinance at hand states that the completed, certified and signed assessment shall be deliveredon or before a particular date. This "on or before" language constitutes a limiting provision as contemplated in Cabana and therefore, to this Court's way of thinking, the use of the word "shall" rather than "may" indicates a mandatory provision.[2]
This opinion is futher supported by the well established principals of statutory interpretation.
It is important to note however, that the tax addressed inCabana was a supplemental rather than the primary tax. The imposition of an additional tax alone works a prejudice on the taxpayer and must be strictly regulated to prevent abuse. The situation facing this Court is not prejudicial as it merely concerns the certification of the tax roll rather than the implementation of an additional tax.
Faced with seemingly contradictory legal principals, this Court must also consider the public policy effects of its ruling. This Court takes judicial notice that Middletown is not the first jurisdiction to be late in the filing of tax assessments. In the performance of municipal duties, there are unforeseen circumstances that delay even seemingly ordinary activities. In this case, the Plaintiff suffered no deprivation of substantive rights as a result of the late and, in one case, filed filing of these tax documents. As evidenced by this suit, she preserved her ability to challenge the assessment. She received her tax bills which started the clock for her appeal. The delayed and/or failed certification did not binder her appeal.
While the language of this statute does appear to be mandatory, the General Assembly has not provided a remedy based on late filings. There is no indication that a late filing renders the tax assessment illegal and therefore, the remedy fashioned for illegal taxation is not applicable. The legislature has sufficient and, in fact, solitary authority to dictate the consequences for a town's failure to certify the completion of a revaluation or the assessor's late filing the role. For this Court to fashion a remedy where none exists, in the matter of taxation, would be a usurpation of power and that is unpalatable.
As recently as July 1998, our Supreme Court grappled with the question of whether a remedy is available to plaintiffs in the absence of explicit statutory provision. Bandoni v. State,715 A.2d 580 (R.I. 1998), involved a serious automobile accident in which the operator of the offending vehicle was intoxicated. The plaintiff victims requested to be "kept apprised of the pending criminal case against [the other driver]" Bandoni at 583. The criminal case proceeded quickly and, without the victims' knowledge, the driver pled nolo contendere to a reduced charge of "reckless driving." It was not until they began to institute a civil suit against the driver that the victims learned of the disposition of the criminal charges. The victims filed a claim against the town of Coventry claiming that they had a right to be advised of their rights under the Victim's Bill of Rights legislation and the victims' rights constitutional amendment. The plaintiff victims proceeded under "both negligence and constitutional deprivation theories to recover monetary damages for defendants' failure to notify them of their rights as crime victims." Id.
In considering this claim for monetary damages, the Supreme Court examined the language of the legislation in questions. Additionally, the Court extensively reviewed the legislative history of this statutory amendment. In so doing, the Court concluded that there was neither an express provision for a cause of action for monetary damages nor any indication that such remedy was intended by the legislature. Specifically, the Court found that "[t]he General Assembly's failure to enact an enforcement provision, coupled with the fact that it has elected to preserve § 12-28-7, which addresses the issue of noncompliance, further supports our conclusion. that a private cause of action for damages was not intended by either the General Assembly or the constitutional framers." Id.
Similarly, the statute presently before this Court for examination fails to provide a remedy for a town's late or failed certification of the tax assessments and/or rolls. However, there is a very explicit remedy provided for situations in which the tax was illegally assessed or collected.[3] The inclusion of a remedy for illegally collected taxes magnifies the absence of a similar provision for failed or late filings. This scheme leads the Court to the conclusion that it was a deliberate omission, not to be ignored.
Furthermore, consider the chaos that would result from a ruling that individuals are entitled to a hill refund whenever a tax assessor is late in filing the necessary certifications. This Court will not be the instrument of such discord and only a directive from the Supreme Court or an explicitly worded statutory amendment rendering the remedy requested by the taxpayer will convince this Court that the legislature intended such a tumultuous result.
Accordingly, this Court denies Plaintiff's request and finds in favor of the Defendant in all of the pending cases. The Attorneys for the Town will prepare and submit the appropriate orders for each case presently before this Court.
[1] Both parties appealed from a Superior Court judgment entered after a nonjury trial on a stipulated set of facts and exhibits.
[2] Having reviewed Town of Tiverton v. Fraternal Order ofPolice, this Court decided that it does not heavily factor into the present analysis for two reasons. First, it is not tax case and because there are cases more on point, it is not necessary to give it great weight. Second, in this Court's opinion, Cabana, a more recent cases also addressed the distinction between mandatory and directory language therefore obviating the need to go outside the subject matter for such discussion.
[3] This Court has already determined this issue in the earlier part of this decision time that the assessment was not illegally performed.