Michael WEST et al.

v.

James McDONALD et al.

No. 2008–254–M.P.

Supreme Court of Rhode Island.

May 6, 2011.

Michael A. Kelly, Providence, Esq., for Petitioner.

Timothy J. Chapman, Esquire, for Respondent.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Justice FLAHERTY, for the Court.

"No man acquires property without acquiring with it a little arithmetic also." [1]

The petitioner, Michael West, acquired both land and more than a little arithmetic when he sought to develop two-family homes on land in an East Providence residential neighborhood.[2] The petitioner desired to construct a total of six units, in the form of three duplexes. After gaining initial support for his proposal from East Providence's zoning officer, West's plan to develop the land eventually was denied by the East Providence Planning Board; that decision was affirmed by both the board of appeals and the Superior Court for Providence County.[3] We granted the petition for certiorari to determine whether the requirements of a municipality's comprehensive plan are controlling when they restrict a use that would seem to be allowed under the zoning code.[4] For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## I

### Facts and Travel

### A

### East Providence's Zoning and Planning Decisions

In February 2006, petitioner sought approval for an administrative subdivision of three parcels of land located between Lynn and Vineland Avenues in East Providence.[5] The land is situated in a residential–4 (R–4) zone that permits construction

---

1. Ralph Waldo Emerson (1803–1882).

2. There actually are two petitioners in this case, Michael West and Michael West Builders, Inc. For the ease of the reader, we shall refer to these parties collectively as West or petitioner.

3. In this case, and in accordance with § 2–19 of the City of East Providence Charter, the zoning board of review heard the appeal from the city's planning board. This is not, however-

er, a traditional zoning case but a matter arising from the city's Comprehensive Land Use Plan.

4. The Court takes this opportunity to thank the amicus curiae, Love's Travel Stops & Country Stores, Inc., for its brief in this case.

5. Map 405, Block 1, parcels 5 and 5.2 are owned by Michael West Builders, Inc. Map 405, Block 1, parcel 5.1 is owned by Michael West.

of two-unit dwellings, provided that they are built on lots containing at least 8,750 square feet. To construct three two-family dwellings on the land and comply with the zoning ordinance, petitioner needed to shift the lot lines of the parcels to achieve three lots of the minimum permissible size (one lot actually would be 10,500 square feet).[6]

After reviewing petitioner's application, the city planner, Jeanne Boyle, determined that West's petition for an administrative subdivision should be reviewed as a minor subdivision.[7] That triggered a more comprehensive approval process because, under municipal regulations, minor subdivisions must be approved by the city's planning board. As such, on March 24, 2006, West resubmitted his application, this time seeking a minor subdivision.

On April 20, 2006, Edward Pimentel, East Providence's zoning officer determined that the proposal complied with the relevant zoning provisions, and he approved West's application for a minor subdivision with respect to any zoning-code provisions. After Ms. Boyle issued a certificate of completeness of the application, it was forwarded to the planning board for its consideration. On May 3, 2006, the planning department made a recommendation to the planning board that that

body grant conditional approval for the subdivision.[8] In its evaluation, the planning department concluded that petitioner's proposal was consistent with East Providence's comprehensive plan, as well as its zoning ordinance.[9]

Although the proposal seemed to be moving seamlessly through the approval process, controversy raised its head when the planning board considered the application at its meeting on May 8, 2006. Despite the assertion of the planning department that the proposed changes in the boundary lines and the construction of three two-family dwellings were in accordance with the comprehensive plan, including the density requirements, several neighbors voiced concern at the meeting. The common thread of the neighbors' objections was that the neighborhood already was densely populated, and the area would not be able to absorb the burden that six additional residential units would bring. In response to the concerns of the neighbors, the planning board continued the hearing in order to investigate the matter further. Specifically, the city planner raised a concern that the proposal might not, in fact, comply with the comprehensive plan's density limits.

Two months later, on July 17, 2006, the planning department sent a second memo

6. Without the lot-line adjustments, parcels 5 and 5.1 are only 8,400 square feet, and parcel 5.2 is 11,200 square feet.

7. Under Article 7, Sec. 7–3 of the East Providence Land Development and Subdivision Review Regulations, the administrative officer may reassign an application for review as a minor subdivision or some other classification if she determines that it does not qualify as an administrative subdivision. This municipal regulation stems from G.L.1956 § 45–23–37(e), which precludes appeal from the denial of an administrative subdivision and requires that such applications be resubmitted as petitions for minor subdivisions.

8. The conditions articulated in the planning department's May 3rd recommendation are not material to this appeal.

9. Among its required findings, the planning department noted: (1) "Based upon the submitted plan and required materials, Planning staff finds that the proposed subdivision is consistent with the East Providence Comprehensive Plan, including its goals, objectives, policy statements and Land use 2010 Plan." (2) "The Zoning Officer has reviewed the site plan and submitted materials and has determined that the subdivision as proposed, fully complies with zoning * * *."

to the planning board. In it, the planning department now concluded that West's proposed plan was "contrary to many of the goals, policies, objectives, maps, and policy statements," of the comprehensive plan.

## B

### East Providence's Comprehensive Plan

Despite its location in a zoning district designated as R–4, petitioner's land is nonetheless sited in an area designated as "Low Density Residential" in East Providence's Comprehensive Land Use Plan. Under the Rhode Island Comprehensive Planning and Land Use Regulation Act, G.L.1956 chapter 22.2 of title 45, municipalities are required to "[e]stablish * * * a program of comprehensive planning * * *." Section 45–22.2–3(b)(1). The purpose of the act is, in part, to "promote the appropriate use of land." Section 45–22.2–3(a)(4). Municipalities must develop and regularly update plans that include (1) a "[g]oals and policies statement" for future growth and development; (2) a "[l]and use plan element" designating the proposed general distribution and general location of land for residential, commercial, and other uses; (3) a "[h]ousing element" identifying and analyzing present and future housing needs and objectives; (4) an "[e]conomic development element"; (5) a "[n]atural and cultural resources element"; (6) a "[s]ervices and facilities element"; (7) an "[o]pen space and recreation element"; and (8) a "[c]irculation element." Section 45–22.2–6. Moreover, cities and towns are required to bring zoning ordinances into conformity with the locality's comprehensive plan. Section 45–22.2–5(a)(3); G.L.1956 §§ 45–24–29(b)(2); 45–24–34; 45–24–50.

In November 2001, the city council amended East Providence's comprehensive plan to decrease the residential density of the "Low Density Residential" category from 8 dwelling units per acre to 5.8 dwelling units per acre. Apart from any zoning requirements, this density limitation had the practical effect of limiting the number of units that could be constructed on West's combined properties to a maximum of 3.72 dwellings. After amending the comprehensive plan, the city council amended the zoning ordinances, purportedly to bring them into conformance with the comprehensive plan. Included among the zoning changes enacted by the council was a requirement that two-family dwellings in R–4 areas maintain a minimum area of 8,750 square feet. However, the area requirement does not refer to any density limitation. The parties agree that the density limitations in the comprehensive plan are more restrictive than the lot-size requirements in the zoning ordinances. Thus, some developments, such as the one proposed by West, would seem to be allowed by the zoning ordinance but not by the comprehensive plan.

After reconsidering the density requirements of the comprehensive plan, the planning department reversed course and recommended that the planning board reject West's application for a minor subdivision. When it reconvened on the application on July 20, 2006, the board did just that, rejecting the proposal on a unanimous vote. West appealed the board's decision to the East Providence Zoning Board of Review, sitting as the board of appeals from the planning board (board of appeals). In a very brief decision, the board of appeals denied the appeal, concluding that the planning board properly had interpreted and applied the comprehensive plan and subdivision regulations. It also affirmed the board's rejection of petitioner's equitable estoppel claim.

West subsequently appealed to the Su-

perior Court.[10]

## C

### The Superior Court Decision

A trial justice of the Superior Court for Providence County heard West's appeal in November 2007. After hearing arguments by the parties, the trial justice affirmed the board of appeals and entered judgment in favor of the City of East Providence on September 10, 2008.

West petitioned this Court for and was granted a writ of certiorari. In his petition, West argues (1) that the Superior Court erred when it held that a municipality is not mandated to conform its zoning ordinance to the comprehensive plan within eighteen months of adopting the comprehensive plan; (2) that the Superior Court misinterpreted East Providence's zoning ordinance, comprehensive plan, subdivision regulations, and the record of prior proceedings; (3) that the Superior Court erred when it failed properly to resolve a conflict between the zoning ordinance and the comprehensive plan, and then ruled that the comprehensive plan controls to resolve any such conflict; (4) that the Superior Court's decision is contrary to public policy and the public interest; and (5) that the doctrine of equitable estoppel prevents the denial of West's proposed subdivision.

## II

### Standard of Review

Under G.L.1956 § 45–23–71, an aggrieved party in an application for the subdivision of land may appeal the decision of the board of appeals to the Superior Court. Subsection (c) of § 45–23–71 describes the standard of review that is employed by that tribunal:

"The court shall not substitute its judgment for that of the planning board as to the weight of the evidence on questions of fact. The court may affirm the decision of the board of appeal or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:

"(1) In violation of constitutional, statutory, ordinance or planning board regulations provisions;

"(2) In excess of the authority granted to the planning board by statute or ordinance;

"(3) Made upon unlawful procedure;

"(4) Affected by other error of law;

"(5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or

"(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

The Superior Court gives deference to the findings of fact of the local planning board. *See Munroe v. Town of East Greenwich*, 733 A.2d 703, 705 (R.I.1999); *Kirby v. Planning Board of Review of Middletown*, 634 A.2d 285, 290 (R.I.1993). That court's review "is confined to a search of the record to ascertain whether the board's decision rests upon 'competent evidence' or is affected by an error of law." *Kirby*, 634 A.2d at 290.

---

**10.** Appeals from decisions of the board of appeals are to the Superior Court under § 45–23–71.

**532**

■ After issuing a writ of certiorari, this Court reviews a trial court's decision on a planning matter with deference. " '[T]he scope of our review is confined to determining whether the trial justice exceeded his or her authority under § 45–23–[71].' " *Munroe*, 733 A.2d at 705 (alteration in the original) (quoting *Kirby*, 634 A.2d at 290); *see Sawyer v. Cozzolino*, 595 A.2d 242, 245 (R.I.1991). "We shall reverse a lower court judgment on appeal from a planning board of review if the trial justice 'misapplied the law, misconceived or overlooked material evidence, or made findings that were clearly wrong.' " *Munroe*, 733 A.2d at 705 (quoting *Kirby*, 634 A.2d at 290); *see Brum v. Conley*, 572 A.2d 1332, 1335 (R.I.1990); *Taylor v. Marshall*, 119 R.I. 171, 178, 376 A.2d 712, 716 (1977).

■ Even though we review the decision below with deference, we nonetheless review issues of statutory interpretation *de novo*. *Pawtucket Transfer Operations v. City of Pawtucket*, 944 A.2d 855, 859 (R.I. 2008) (citing *Palazzolo v. State ex rel. Tavares*, 746 A.2d 707, 711 (R.I.2000)); *Iselin v. Retirement Board of the Employees' Retirement System of Rhode Island*, 943 A.2d 1045, 1049 (R.I.2008). A planning board's determinations of law, like those of a zoning board or administrative agency, are not binding on the reviewing court; they may be reviewed to determine what the law is and its applicability to the facts. *See Pawtucket Transfer Operations*, 944

A.2d at 859 (citing *Gott v. Norberg*, 417 A.2d 1352, 1361 (R.I.1980)).

■ It is well settled that the rules of statutory construction apply in the same manner to the construction of an ordinance.[11] *Ryan v. City of Providence*, 11 A.3d 68, 70 (R.I.2011) (citing *Ruggiero v. City of Providence*, 893 A.2d 235, 237 (R.I. 2006) and *Mongony v. Bevilacqua*, 432 A.2d 661, 663 (R.I.1981)).

■ When a legislative enactment consists of clear and unambiguous language, this Court will interpret it literally, giving the words contained therein their plain and ordinary meaning. *Ryan*, 11 A.3d at 71; *Accent Store Design, Inc. v. Marathon House, Inc.*, 674 A.2d 1223, 1226 (R.I.1996); *see Berthiaume v. School Committee of Woonsocket*, 121 R.I. 243, 247, 397 A.2d 889, 892 (1979). Additionally, "when the provisions of a statute are unclear or subject to more than one reasonable interpretation, the construction given by the agency, or board, charged with its enforcement is entitled to weight and deference, as long as that construction is not clearly erroneous or unauthorized." *Pawtucket Transfer Operations*, 944 A.2d at 859–60 (citing *Flather v. Norberg*, 119 R.I. 276, 283 n. 3, 377 A.2d 225, 229 n. 3 (1977)). "This is true even when other reasonable constructions of the statute are possible." *Pawtucket Transfer Operations*, 944 A.2d at 860; *accord In re Lallo*, 768 A.2d 921, 926 (R.I.2001); *Gallison v. Bristol School Committee*, 493 A.2d 164, 166 (R.I.1985).

11. General Laws 1956 § 45–22.2–8(c) provides in pertinent part:
 "A comprehensive plan is adopted, for the purpose of conforming municipal land use decisions and for the purpose being transmitted to the director for state review, *when it has been enacted by the legislative body of the municipality pursuant to the manner provided for the adoption of ordinances in the municipality's legislative or home rule charter.* All ordinances dealing with the adoption of or amendment to a municipal comprehensive plan shall contain language stating that *the comprehensive plan ordinance or amendment* shall not become effective for the purposes of guiding state agency actions until it is approved by the state of Rhode Island pursuant to the methods stated in this chapter, or pursuant to any rules and regulations adopted pursuant to this chapter." (Emphases added.)

## III

## Analysis

## A

### Conforming Zoning Ordinances to the Comprehensive Plan Within Eighteen Months

The Rhode Island Comprehensive Planning and Land Use Regulation Act (CPLURA), chapter 22.2 of title 45, requires that every municipality in the state adopt a comprehensive plan to guide "rational decision making regarding the long term physical development of the municipality." Section 45–22.2–6. The plan, set out in text, maps, illustrations, or other media of communication, must include a statement of goals and policies, a land-use element, and a housing element. Moreover, municipalities must bring their zoning ordinances and maps into conformance with their comprehensive plans within eighteen months after the state approves the plan. Section 45–22.2–5(a)(3) (saying that a city "*shall * * * [c]*onform its zoning ordinance and map with its comprehensive plan within eighteen (18) months of plan adoption and approval") (emphasis added); § 45–24–29(b)(2) ("[T]he zoning enabling authority contained in this chapter *require[s]* each city and town to conform its zoning ordinance and zoning map to be consistent with its comprehensive plan * * *.") (emphasis added); § 45–24–34(b) ("The city or town *shall* bring the zoning ordinance or amendment into conformance with its comprehensive plan * * * not more than eighteen (18) months after approval is given.") (emphasis added); § 45–24–50(d) ("The city or town *must* bring the zoning ordinance or amendment into conformance with its comprehensive plan * * * not more than eighteen (18) months after approval is given.") (emphasis added).

In addition, the Zoning Enabling Act also requires that a city or town's zoning code be consistent with the comprehensive plan. Section 45–24–34(a) provides:

"A zoning ordinance adopted or amended pursuant to this chapter shall include a statement that the zoning ordinance is consistent with the comprehensive plan of the city or town adopted pursuant to chapter 22.2 of this title, or as otherwise provided below and shall provide that in the instance of uncertainty in the construction or application of any section of the ordinance, the ordinance shall be construed in a manner that will further the implementation of, and not be contrary to, the goals and policies and applicable elements of the comprehensive plan."

Section 45–24–34(b) goes on to direct that "[t]he city or town shall bring the zoning ordinance or amendment into conformance with its comprehensive plan as approved by the director of administration, the state comprehensive plan appeal board, or the Supreme Court not more than eighteen (18) months after approval is given."

 The petitioner argues, as he did below, that because East Providence failed to bring its zoning ordinances into complete consistency with its comprehensive plan within eighteen months of the plan's endorsement by the state, a development proposal that conforms only to the zoning ordinances must be approved by the city. The trial justice concluded that the eighteen-month time limit is directory and not mandatory. She also noted that rendering the comprehensive plan a nullity merely because the zoning ordinance has not yet been amended to mirror the comprehensive plan would be a result not supported by public policy.[12]

---

12. Before the Superior Court, petitioner suggested that "any failure of the [c]ity to amend

Although we agree with petitioner's assertion that there is a statutory requirement that cities and towns enact or amend their zoning ordinances to conform to their comprehensive plans, we concur with the trial justice that the time-frame itself is directory and not mandatory.[13] *See Town of East Greenwich v. Narragansett Electric Co.,* 651 A.2d 725, 728 (R.I.1994); *P.J.C. Realty, Inc. v. Barry,* 811 A.2d 1202, 1204–05 (R.I.2002).

■ We previously have held that "statutes imposing apparently mandatory time restrictions on public officials are often directory in nature." *New England Development, LLC v. Berg,* 913 A.2d 363, 371 (R.I.2007) (citing *Washington Highway Development, Inc. v. Bendick,* 576 A.2d 115, 117 (R.I.1990); *Beauchesne v. David London & Co.,* 118 R.I. 651, 660, 375 A.2d 920, 924–25 (1977); *Providence Teachers Union v. McGovern,* 113 R.I. 169, 177, 319 A.2d 358, 363–64 (1974)); *see* 3 Norman J. Singer, *Sutherland on Statutory Construction* § 57:19 (7th ed.2008) (acknowledging time within which boards or commissions must meet and take official action, or within which ordinance must be published to become effective, construed as directory). This Court looks to a variety of factors when analyzing whether time provisions are directory or mandatory, including (1) the presence or absence of a sanction, (2) whether the provision is the essence of the statute, and (3) whether the provision is aimed at public officers. *See Berg,* 913 A.2d at 372; *Town of Tiverton v. Fraternal Order of Police, Lodge # 23,* 118 R.I. 160, 164–65, 372 A.2d 1273, 1275–76 (1977).

In *Berg,* 913 A.2d at 372, we held that "the absence of a sanction" rendered the "requirement directory as opposed to mandatory." Similarly, in *Washington Highway Development,* 576 A.2d at 117, this Court determined that a six-week timetable for a decision from the Department of Environmental Management was directory rather than mandatory, in part because "the Legislature did not provide a sanction for the failure to meet th[e] requirement." In CPLURA and the Zoning Enabling Act, there are no sanctions for failing to comply with the requirement to conform zoning ordinances to comprehensive plans within the eighteen-month period set forth in the statute. Such an omission bespeaks that the provisions are directory.

■ Further, this Court has said that "[t]he general rule is that statutory requirements comprising the essence of a statute are mandatory." *Town of Tiverton,* 118 R.I. at 164, 372 A.2d at 1275. On the other hand, "[p]rovisions so designed to secure order, system and dispatch are generally held directory unless accompanied by negative words." *Providence Teachers Union,* 113 R.I. at 177–78, 319 A.2d at 364. The petitioner argues that the presence of negative words—namely, the several provisions of the statute dictate that the zoning ordinances shall be brought into conformity *not more than* eighteen months after a comprehensive plan is approved—means the time limit must be construed as mandatory. Howev-

its zoning ordinance to incorporate, in detail, the provisions of its [c]omprehensive [p]lan should * * * render that plan irrelevant."

13. Moreover, we are not wholly convinced that the zoning code was not brought into compliance with the comprehensive plan. After the adoption of the Comprehensive Plan, East Providence amended some sections of the zoning code, including the dimensional requirements for the construction of two-unit dwelling houses in R–4 zones. Although the comprehensive plan and zoning code employ different measures (area and density), they need not be identical, and they do not clearly contradict one another.

er, despite the presence of negative words, and a grant of power that is followed by limiting language in the statute at issue here, "[i]n those fields of administrative action where an exercise of discretion is normally intended * * * provisions granting power may be held to be directory." 3 Singer, *Sutherland on Statutory Construction* § 57:17 at 70. In *Providence Teachers Union*, 113 R.I. at 178, 319 A.2d at 364, this Court held that, based on the absence of anything "naturally expressive of an intention to make compliance a condition precedent" and the fact that the "provision relate[d] to a matter of procedure," the requirement that an arbitrator call a hearing within ten days was directory. Here, the raison d'être of the CPLURA and the Zoning Enabling Act is to promote the intelligent development of land. The trial justice aptly summarized this principle when she said, "a unified system of land use regulation is the essence of the statute and the time frames * * * are subsidiary to this overarching concern."

The eighteen-month requirement is also directed at public officials, as opposed to private individuals. "In the former instance it is deemed preferable not to prejudice private rights or the public interest where the fault for delay rests with a public officer." *Town of Tiverton*, 118 R.I. at 164–65, 372 A.2d at 1275. In *Town of Tiverton*, where the provision at issue required the bargaining agent to serve written notice of the request for collective bargaining within 120 days, this Court determined that it undoubtedly was directed at private individuals and held that it was mandatory. *Id.* at 164–65, 372 A.2d at 1275–76.

Although petitioner relies on *Cabana v. Littler*, 612 A.2d 678 (R.I.1992), the tax structure in that case is distinguishable from the time-limit at issue here. In *Cabana*, this Court observed that a provision

requiring all taxes to be due and payable not later than the thirtieth day of the fiscal year was mandatory, thereby negating an effort to levy a supplemental tax after the deadline. *Id.* at 683. The date by which taxes are due and payable is a central component of a taxing scheme. *See id.* Indeed, the Court in *Cabana* noted that the taxing power is "not absolute" and held that courts "must assiduously protect the people from abuse of the government's taxing authority by requiring strict adherence to * * * unequivocal instructions." *Id.* at 684. By contrast, provisions dictating the time within which zoning ordinances must be brought into conformity with comprehensive plans are not the essence of broader land-use planning statutes; nor is the administrative act of zoning the kind of government action from which the citizenry requires safeguards against abuse. In our opinion, the eighteen-month time requirement present here simply relates to a matter of procedure. *See id.* at 683; *Providence Teachers Union*, 113 R.I. at 177–78, 319 A.2d at 364; *see also* 3 Singer, *Sutherland on Statutory Construction* § 57:17.

For the reasons outlined above, we conclude that the provisions requiring that zoning ordinances conform to comprehensive plans within eighteen months are directory rather than mandatory. As a result, a municipality's failure to amend a zoning code within eighteen months does not eviscerate the goals, requirements, and mandates of a municipality's comprehensive plan.

**B**

**Zoning Ordinance and the Comprehensive Plan**

The central issue facing the Court in this petition involves the subdivision of land, and not zoning enforcement. Although each has its own purpose, a munici-

pality's comprehensive plan and its zoning ordinance are intended to work in concert with one another. A central goal of comprehensive planning, as articulated by the General Assembly, is to encourage cities and towns to plan for orderly growth and development and the appropriate use of land, as well as for the protection and management of land and natural resources. *See* § 45–22.2–3. In contrast, municipal zoning regulations are necessary *"to establish and enforce standards and procedures* for the proper management and protection of land, air, and water as natural resources, and *to employ contemporary concepts, methods, and criteria* in regulating the type, intensity, and arrangement of land uses * * *." Section 45–24–29(b)(3) (emphases added).

In her decision, the trial justice found that East Providence's zoning ordinance is not inconsistent with the city's comprehensive plan because the former sets out an area requirement while the latter focuses on density limitations. She concluded that "it does not necessarily follow that a municipality's Comprehensive Plan is inconsistent with its ordinance if the plan contains elements that the ordinance does not." Moreover, "[b]ecause the Comprehensive Plan's density requirement is addi-

tional to—not inconsistent with—the dimensional requirements of zoning, the * * * assertion that the zoning ordinance would control the board's decision in the event of an inconsistency" is irrelevant. In short, the trial justice determined that the board of appeals did not err when it denied West's proposal because the proposal failed to comply with the comprehensive plan, even if it did comply with the zoning requirements.

### 1

### The East Providence Planning Board Review Regulations for Proposed Subdivisions

The Rhode Island Land Development and Subdivision Review Enabling Act sets the parameters for localities' regulations governing administrative, minor, and major development applications. Specifically, § 45–23–60 mandates that a municipality's regulations include a provision or provisions noting that those charged with approving applications for land development and subdivision review make several findings, including that the proposed development is consistent with *both* the municipality's comprehensive plan and zoning ordinances.[14] In accordance with this di-

14. Section 45–23–60 says:

"(a) All local regulations shall require that for all administrative, minor, and major development applications the approving authorities responsible for land development and subdivision review and approval shall address each of the general purposes stated in § 45–23–30 and make positive findings on the following standard provisions, as part of the proposed project's record prior to approval:
"(1) *The proposed development is consistent with the comprehensive community plan* and/or has satisfactorily addressed the issues where there may be inconsistencies;
"(2) *The proposed development is in compliance with the standards and provisions of the municipality's zoning ordinance;*

"(3) There will be no significant negative environmental impacts from the proposed development as shown in the final plan, with all required conditions for approval;
"(4) The subdivision, as proposed, will not result in the creation of individual lots with any physical constraints to development that building on those lots according to pertinent regulations and building standards would be impracticable. * * * Lots with physical constraints to development may be created only if identified as permanent open space or permanently reserved for a public purpose on the approved, recorded plans; and
"(5) All proposed land developments and all subdivision lots have adequate and permanent physical access to a public street. Lot frontage on a public street without

rective, the Planning Board for East Providence adopted Land Development and Subdivision Review Regulations. Article 5, sec. 5–4 of those regulations addresses the findings the Planning Board must make when considering minor subdivisions by providing as follows:

"[T]he Administrative Officer or Planning Board * * * shall make positive findings on all of the applicable standards listed below * * *[:]

"(a) Subdivision and land development project proposals shall be consistent with the East Providence Comprehensive Plan, including its goals, objectives, policy statements and Land Use 2010 Plan, and/or shall satisfactorily address the issues where there may be inconsistencies;

"(b) All lots in a subdivision and all land development projects shall conform to the standards and provisions of [Chapter 19, Zoning] * * *."

Thus, under both state and municipal law, petitioner's subdivision proposal must comply with *both* the comprehensive plan and the zoning code. The petitioner, however, contends that because the two requirements are not wholly consistent (*i.e.*, it is possible to comply with one and not with the other), the zoning code should control.

**2**

### Complying with Both East Providence's Comprehensive Plan and its Zoning Ordinances

■ In 2004, East Providence adopted the version of the comprehensive plan that is relevant to this case. The parties agree that the comprehensive plan limits development on West's parcels to a maximum density of 5.8 dwelling units per acre.

West and the city also agree that the proposed development would result in a dwelling-unit density that exceeds the limit set forth in the comprehensive plan. Separate and apart from the limitations set forth in the comprehensive plan, East Providence's Zoning Ordinances, specifically § 19–98, contain a minimum dimensional requirement of 8,750 square feet for two-family dwellings in an R–4 zone. It is undisputed that West's proposed development would, under the zoning ordinance, allow for the construction of a two-family dwelling on each of the three proposed lots.

■ West argues that the lesser restrictions of the zoning code should override the density limitations of the comprehensive plan. In making this argument, he relies on language in part C. 1–66 of the East Providence Comprehensive Plan, which seeks to address inconsistencies among the land-use plan element, other plan elements, the state guide plan, and the city's zoning regulations. C. 1–66(i) of the plan provides in pertinent part:

"The one area of potential conflict exists as the Plan relates to current City Zoning. The Rhode Island Comprehensive Planning and Land Use Act requires that City Zoning be consistent with the Comprehensive Plan. The Comprehensive Planning and Land Use Act further requires that the City set forth its implementation program to conform its zoning ordinance and map to the Comprehensive Plan. It is the intent of the City that the Comprehensive Plan *shall include the current zoning map* for the City and *that there shall be no requirement for immediate changes to that zon-*

physical access shall not be considered in compliance with this requirement.

"(b) Except for administrative subdivisions, findings of fact must be supported by

legally competent evidence on the record which discloses the nature and character of the observations upon which the fact finders acted." (Emphases added.)

*ing map.* The implementation program and procedures of the Plan shall be that rezoning shall only occur upon the request of any individual property owner; at such time the text of the Plan will control any such changes. * * *

"It is not the City's intent or desire to initiate rezoning to force immediate compliance. Only when rezonings are requested by property owners will rezoning be considered. At such time the rezoning must comply with the Plan; until such request occurs, the current zoning will prevail." (Emphasis added.)

The zoning map is a document that is provided for by the zoning ordinance. The two, however, are not synonymous; indeed, the zoning map is treated as a unique document for the purposes of proposed amendments and the like, requiring a separate petition. *See* §§ 19–72(b), 19–73(b) of the City of East Providence Revised Ordinances. Under our principles of statutory construction, we cannot simply regard the terms "zoning ordinance" and "zoning map" as interchangeable. When we interpret a statute or ordinance, "[w]e presume that the [Legislature] intended to attach significance to every word, sentence and provision of a statute." *Retirement Board of the Employees' Retirement System of Rhode Island v. DiPrete,* 845 A.2d 270, 279 (R.I.2004) (citing *Champlin's Realty Associates, L.P. v. Tillson,* 823 A.2d 1162, 1165 (R.I.2003)). "When presented with a clear and unambiguous enactment, there is no room for statutory construction, and the statute will be literally applied, attributing the plain and ordinary meaning to its words." *Id.* (citing *Interstate Navigation Co. v. Division of Public Utilities and Carriers,* 824 A.2d 1282, 1287 (R.I.2003)).

In this case, we conclude that the comprehensive plan refers to the zoning map and not to the broader and more inclusive zoning ordinance. The petitioner's land is sited in an area denominated as R–4. Neither party suggests that that designation was in any way changed by the comprehensive plan, or that the uses allowed in that district have been altered.[15] Therefore, in our opinion, C. 1–66 provides no relief from petitioner's predicament.

3

### Sections 19–8 and 19–3 of the City of East Providence Revised Ordinances

 In addition to the requirements for subdivision approval, the East Providence zoning code specifically addresses the issues that arise when two requirements are not wholly consistent with each other. Section 19–8 of the City of East Providence Revised Ordinances addresses the potential for conflicts between the zoning code and other statutes, ordinances, and regulations. Subsection (a) of § 19–8 provides:

"This chapter shall not repeal, annul or impair any existing provisions of law, this chapter, other ordinances or any rules or regulations previously adopted or issued or which shall be adopted or issued pursuant to law relating to the use of buildings or premises. However, wherever the terms of this chapter require a greater width or size of yards or other open spaces, a lower height of building or less number of stories or a greater percentage of lots to be left unoccupied or impose other greater standards than are required in any other statute, ordinance or regulation, the provisions of this chapter shall govern. *Wherever the provisions of any other statute, ordinance or regulation require a greater width or size of yards, courts*

---

15. Indeed, two-family dwellings are still permitted.

*or other open spaces, a lower height of building or less number of stories or a greater percentage of lots to be left unoccupied or impose other higher standards than are required in this chapter, the provisions of such statute, ordinance or regulation shall govern.*" (Emphasis added.)

The petitioner asserts that the comprehensive plan does not carry the weight of a statute, ordinance, or regulation, and, therefore, that those higher standards do not control.[16] We do not agree. We specifically have addressed the status of comprehensive plans and the weight to be afforded to them. *Town of East Greenwich,* 651 A.2d at 727 ("We believe a comprehensive plan is not simply the innocuous general-policy statement the town contends it is. Instead, the comprehensive plan * * * establishes a binding framework or blueprint that dictates town and city promulgation of conforming zoning and planning ordinances."); *accord East Bay Community Development Corp. v. Zoning Board of Review of Barrington,* 901 A.2d 1136, 1154–55 (R.I.2006). A municipality must adopt its comprehensive plan in the same manner in which it adopts ordinances. Indeed, the CPLURA says that "[a] comprehensive plan is adopted * * * when it has been enacted by the legislative body of the municipality *pursuant to the manner provided for the adoption of ordinances in the municipality's legislative or home rule charter.*"

Section 45–22.2–8(c) (emphasis added). In East Providence, pursuant to the city's charter, the city council adopts all ordinances in accordance with its rules.[17] The council adopts the comprehensive plan using the same procedures. *See* note 12, *supra.*

Finally, § 19–3 of the city's zoning code says: "[i]n instances of uncertainty in the construction or application of any section of this chapter, the ordinance shall be construed in a manner that will further the implementation of and not be contrary to, the goals and policies and applicable elements of such comprehensive plan." These provisions of the zoning code carry no less weight than any provisions outlining permissible uses or the area requirements for permitted uses. *See Sorenson v. Colibri Corp.,* 650 A.2d 125, 128 (R.I. 1994) ("[W]e consider the entire statute as a whole; individual sections must be considered in the context of the entire statutory scheme, not as if each section were independent of all other sections."). Overall, the legislative scheme provides a clear roadmap for resolving seemingly competing provisions of the comprehensive plan and the zoning code. We must, therefore, conclude that there was no error in the denial of the application for a subdivision that did not comply with the comprehensive plan. To secure approval for his proposed development, it was West's burden to comply with the municipality's subdivi-

---

**16.** This code provision was not cited in either party's brief to this Court. Additionally, it was mentioned only in passing by the trial justice, who said: "The City's ordinance also provides that if the City's subdivision regulations 'impose other higher standards than are required [by the ordinance itself], the provision of such * * * regulation shall govern.'" (Alteration and omission in the original.)

**17.** Under § 2–9(8) of the City of East Providence Charter, the city council shall have the

power to "[a]dopt ordinances for the government of the city which have to do with records, franchises, finance, personnel, civil service or merit system, pensions and retirement systems, public works, public safety, public welfare, public health, city planning, zoning, parks and playgrounds, and safe and sanitary housing, public utilities and other municipal functions not in conflict with the constitution and laws of the state[.]"

sion regulations, its comprehensive plan, and its zoning code.

## C

### Equitable Estoppel

■ The petitioner asserts that, irrespective of any restrictions in the comprehensive plan, the city should be estopped from denying his subdivision proposal because petitioner "relied upon the existing Zoning Ordinances and Subdivision Regulations to purchase and propose the development Project." He maintains that because changes to the comprehensive plan do not carry the same notice requirements as changes to zoning ordinances, failure to amend the zoning ordinance to comport with the comprehensive plan renders any limitation on zoning uses unenforceable under equitable principles. West further argues that his reliance on the permissible uses outlined in the zoning ordinances was both substantial and detrimental to him.

The trial justice rejected this argument, finding that the factual circumstances present in this case did not give rise to one of those "rare instance[s] where the equities are clearly balanced in favor of the party seeking relief." *See Greenwich Bay Yacht Basin Associates v. Brown*, 537 A.2d 988, 991 (R.I.1988); *see also Town of Glocester v. Olivo's Mobile Home Court, Inc.*, 111 R.I. 120, 130, 300 A.2d 465, 471 (1973). She determined that petitioner should have been aware that he would have to comply with both the zoning ordinance and the comprehensive plan as soon as his proposal was reclassified from an administrative subdivision to a minor subdivision. She further determined that the planning board had taken no action that could have precipitated reasonable reliance on the part of the petitioner. Finally, she found that petitioner had not incurred any "substantial obligations" that would require an equitable remedy. We agree with her findings and conclusions.

■ There are four elements to equitable estoppel: (1) good faith reliance; (2) on an act or omission of a municipality; (3) which induces a party to incur substantial obligations; (4) making it highly inequitable to enforce the zoning [or planning] ordinance. 4 Rathkopf, *The Law of Zoning & Planning*, § 65.29 at 65–57 to 65–61 (2010). "[T]he doctrine of estoppel should be applied against public agencies to prevent injustice and fraud where the agency or officers thereof, acting within their authority, made representations to cause the party seeking to invoke the doctrine either to act or refrain from acting in a particular manner to his detriment." *Ferrelli v. Department of Employment Security*, 106 R.I. 588, 594, 261 A.2d 906, 910 (1970). This case, however, does not give rise to such a circumstance.

The cases to which petitioner directs this Court, *Tantimonaco v. Zoning Board of Review of Johnston*, 102 R.I. 594, 232 A.2d 385 (1967), and *Shalvey v. Zoning Board of Review of Warwick*, 99 R.I. 692, 210 A.2d 589 (1965), are inapposite to the present controversy. In *Tantimonaco*, this Court upheld a landowner's right to construct a gas station when he had incurred significant contractual obligations for the construction of the station in reliance on a valid building permit issued for a particular use, even after that use was prohibited by a later-enacted amendment to the zoning ordinance. *Tantimonaco*, 102 R.I. at 602–03, 232 A.2d at 390. *Shalvey* similarly involved a landowner who obtained a valid building permit for a use that subsequently was prohibited by an amendment to the zoning code. In that case, the Court remanded the case for a determination by the zoning board on whether the landowner substantially had improved the property

in reliance on the permit. *Shalvey,* 99 R.I. at 702, 210 A.2d at 595.[18]

Here, simply by enacting a zoning ordinance setting forth permissible uses, the city made no representations upon which West reasonably could rely. Purchasing property with the purpose of putting the property to a particular use in light of a then-existing zoning ordinance is a patently insufficient basis on which to invoke the doctrine of equitable estoppel. Because statutes and ordinances are subject to change, they do not constitute a continuing representation by the municipality upon which citizens can indefinitely rely. *See Ocean Road Partners v. State,* 612 A.2d 1107, 1111 (R.I.1992).

Finally, West argues that he relied on the fact that the zoning ordinances are required to conform to a municipality's comprehensive plan. Thus, West suggests that meeting the requirements of the zoning ordinance should mean that one has similarly met the requirements of the plan. We do not agree. There is no requirement that the zoning ordinances and comprehensive plan be identical. Indeed, they are meant to address substantively different issues and may contain different, yet non-conflicting, requirements. *See* part IIIB, *supra.* Because the subdivision regulations require compliance with both the ordinances and the comprehensive plan, West cannot assert that his reliance on only one of those provisions is sufficient to invoke estoppel. *See* § 45–23–60 and Land Development in Subdivision Review Regulations Article 8, Sec. 8–4. West certainly should have been aware that his proposal could be denied if it failed to adhere to the mandates of both documents.

**Conclusion**

For the reasons set forth above, we affirm the judgment of the Superior Court. The petition for certiorari is denied, and the writ heretofore issued is quashed. The record is remanded to the Superior Court with our decision endorsed thereon.

---

18. In *Almeida v. Zoning Board of Review of Tiverton,* 606 A.2d 1318 (R.I.1992), this Court affirmed the right of a municipality to nullify a building permit that had been illegally issued in contravention of zoning ordinances.