November 27, 2024

**Supreme Court**

No. 2023-270-Appeal.
(PC 21-1993)

Walter L. Bronhard d/b/a Walter L.      :
    Bronhard Real Estate

             v.      :

Thayer Street District Management      :
       Authority.

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

| | | |
|---|---|---|
| Walter L. Bronhard d/b/a Walter L. Bronhard Real Estate | : | |
| v. | : | |
| Thayer Street District Management Authority. | : | |

Present: Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

**O P I N I O N**

**Chief Justice Suttell, for the Court.** The plaintiff, Walter L. Bronhard d/b/a Walter L. Bronhard Real Estate, appeals from a Superior Court judgment entered in favor of the defendant, Thayer Street District Management Authority, following the grant of the defendant's motion for summary judgment. This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument. For the reasons set forth herein, we affirm the judgment of the Superior Court.

# I

# Facts and Travel

At the heart of this case is the District Management Authorities Act, G.L. 1956 chapter 59 of title 45, which was enacted "to authorize towns and cities to create district management authorities for the purpose of providing the services and undertaking" certain activities "to supplement the services provided by municipal governments." Section 45-59-2(b). The act sought to enable a "public-private corporation to provide security, cleaning and other services" in business districts "to supplement, but not to substitute for, the services now being provided in [*sic*] by municipalities within these districts." Section 45-59-2(a)(3). Indeed, § 45-59-8 provides:

> "The district management authority thus created will be a body corporate and politic and an instrumentality and agency of the municipality within which the management district is located but having a distinct legal existence from the municipality. It is hereby declared that in exercising the powers granted to it by this chapter, the district management authority will exercise public and essential governmental functions of the municipality. No part of the net earnings of the district management authority will be distributable to, or inure to the benefit of, any private person."

These district management authorities are authorized to levy a special tax assessment upon the owners of taxable real property within the management district. Section 45-59-15.

In October 2005, business owners from the Thayer Street area submitted a petition to the City of Providence seeking the formation of a management district and a district management authority (DMA) in accordance with § 45-59-4.

The Providence City Council approved the Thayer Street District Management Authority (TSDMA or defendant) by ordinance dated January 29, 2006. TSDMA thereafter began issuing tax assessments in October 2006, for the fiscal year[1] beginning on July 1, 2006. On October 14, 2009, TSDMA submitted the list of signatures required for continuation of the district under § 45-59-22(c). Section 45-59-22(c) provides:

> "Any district management authority will be automatically dissolved and the designation of a management district will be automatically terminated at the end of the third full fiscal year after its creation and designation and after it has actually commenced providing services unless the continuance of the existence of the district management authority and the designation of the district is approved in writings which are filed with the clerk of the municipality within which the management district is located and are signed by persons who own real property located within the district and within any subdistrict constituting, in the aggregate, not less than sixty percent (60%) of the aggregated assessed valuation of all real property, not exempt from taxation by law."

---

[1] For purposes of the District Management Authorities Act, "fiscal year" is defined as "the fiscal year of the municipality within which the management district is located; 'first fiscal year' means the first full fiscal year after the fiscal year during which the management district is created; subsequent fiscal years are referred to in like manner." General Laws 1956 § 45-59-3(a)(3).

It is undisputed that TSDMA did not file the continuation petition within the time required by the statute.

The events leading to this lawsuit appear to have begun with a dispute over the dumping of boxes in Fones Alley. According to a February 2021 letter from plaintiff's counsel to the executive director of TSDMA, an email was sent to "one of [plaintiff's] employees regarding what [the executive director] termed 'illegal dumping on Fones Alley' of two boxes bearing the name of one of [plaintiff's] tenants." The letter indicated that the boxes had been removed but alleged that the email demand may have been outside of TSDMA's authority. Citing § 45-59-22(c), the letter stated that "[o]ur research indicates that TSDMA failed to file the requisite written approval within three years of the commencement of its operations in 2006, or at any other time. If we are correct, this would mean that TSDMA automatically dissolved as a matter of law in 2009, and has been operating lawlessly, and without legal authority, ever since." It does not appear that TSDMA responded to the letter.

The plaintiff thereafter filed a complaint against TSDMA on March 19, 2021. The plaintiff contended that the continuation petition was filed too late—on October 14, 2009—and that the district automatically dissolved on January 1, 2010, and that all actions taken by defendant since then, including special assessments, were

unlawful.[2] The plaintiff claimed that he had paid more than $15,000 in special assessments levied by TSDMA. The plaintiff alleged that TSDMA imposed and collected taxes on plaintiff's property without authority, effected an illegal taking of property, and "engaged in extreme and outrageous conduct" "under the color of state law[.]" The complaint also contained allegations of fraud, negligence, and unjust enrichment. TSDMA filed an answer in response, denying plaintiff's allegation that it "automatically dissolved as a matter of law, effective January 1, 2010[,]" and denying each of his claims.

TSDMA moved for summary judgment on January 3, 2023. The defendant asserted that, although plaintiff's complaint contained different allegations requiring different elements of proof, the underlying facts in the complaint were the same, specifically that TSDMA failed to file its continuation petition within the time required by statute.

On February 17, 2023, plaintiff filed a cross-motion for summary judgment and opposition to defendant's motion for summary judgment. The plaintiff agreed that the "central underlying fact" was undisputed, namely that TSDMA failed to

---

[2] Initially, plaintiff alleged that "TSDMA automatically dissolved, *effective January 1, 2010* (*i.e.*, the period immediately following the end of the third full fiscal year after the TSDMA began providing services (*see* § 45-59-22(c)) unless a Written Approval of Continued Existence was filed in 2009." (Emphasis added.) It was later clarified that the fiscal year ran from July 1 through the following June 30, rather than from January through December.

meet the statutory deadline for filing the continuation petition. The plaintiff sought summary judgment on counts one (declaratory judgment and injunctive relief), three (negligence), and six (illegal taking and due-process violation) of the complaint. The plaintiff acknowledged that summary judgment in his favor would not be appropriate on the remaining counts—two (fraud), four (unjust enrichment), and five (tax payments)—because they involved factual issues. Nevertheless, plaintiff stipulated to dismissal of the latter counts if summary judgment in his favor were entered on counts one, three, and six.

The motions were heard remotely on April 26, 2023, before a justice of the Superior Court. The defendant argued that the time constraint is directory, whereas plaintiff contended that the time constraint is mandatory. Specifically, defendant submitted that relevant factors supported a conclusion that the time constraint was directory—namely, the statute contained no sanction for a late filing, the deadline did not reflect the essence of the statute, and the time limit was directed at public officers. The plaintiff, in response, asserted that the dissolution of TSDMA was mandatory as a matter of law and refuted defendant's argument that the statute should be considered directory. He further argued that the statute is clear and unambiguous in requiring automatic dissolution if the continuation filing is not submitted by the end of the third full fiscal year.

The hearing justice, after hearing argument from both parties, issued a bench decision the same day.  He recognized that the elements necessary to prove each count differ, but that "the crux of each claim hinges" on whether TSDMA was dissolved for failing to comply with the filing deadline in § 45-59-22(c), a fact that was undisputed by the parties.  The hearing justice laid out the facts of the case and identified that the core issue is "whether the statutory time limitation [in § 45-29-22(c)] is mandatory and therefore necessitates strict compliance such that the district authority ceased to exist as of June 30, 2009."

The hearing justice then considered the factors enumerated by this Court in *West v. McDonald*, 18 A.3d 526 (R.I. 2011), namely, "(1) the presence or absence of a sanction, (2) whether the provision is the essence of the statute, and (3) whether the provision is aimed at public officers." *West*, 18 A.3d at 534.

He determined, first, that the automatic-dissolution provision was not a sanction; instead, "the time limit operates to prevent inactive district management authorities from continuing operations * * *."  He found that TSDMA "has been active since its creation and has continuously provided services to the Thayer Street District[.]"  Second, he found that the time limitation was not the essence of the statute; its purpose is to provide services to commercial districts in large municipalities through active DMAs, the hearing justice explained.  Third, the

hearing justice determined that TSDMA is an instrumentality and agency of the City of Providence and that, therefore, the deadline is aimed at public officers.

The hearing justice concluded that the time limitation in the statute was directory in nature and that TSDMA did not automatically dissolve when it failed to comply with that deadline. He further determined that this conclusion was dispositive of all issues raised by the parties. Accordingly, the hearing justice granted defendant's motion for summary judgment and denied plaintiff's cross-motion for summary judgment. An order to that effect entered on May 19, 2023, and final judgment entered on May 26, 2023.

The plaintiff filed a timely notice of appeal on May 31, 2023.

**II**

**Standard of Review**

"This Court reviews *de novo* a hearing justice's decision granting summary judgment." *Bennett v. Steliga*, 300 A.3d 558, 567 (R.I. 2023) (quoting *McNulty v. Chip*, 116 A.3d 173, 179 (R.I. 2015)). "Examining the case from the vantage point of the hearing justice who passed on the motion for summary judgment, we view the evidence in the light most favorable to the nonmoving party." *Id.* (brackets and deletion omitted) (quoting *Yanku v. Walgreen Co.*, 224 A.3d 1130, 1132-33 (R.I. 2020)).

Additionally, this Court reviews questions of statutory interpretation *de novo*. *See, e.g.*, *Finnimore & Fisher Inc. v. Town of New Shoreham*, 291 A.3d 977, 983 (R.I. 2023). "In so doing, our ultimate goal is to give effect to the purpose of the act as intended by the Legislature." *Id.* (quoting *Butler v. Gavek*, 245 A.3d 750, 754 (R.I. 2021)).

## III

## Discussion

On appeal, plaintiff argues that the hearing justice ignored the plain language of the statute by applying the *West* factors to this case. Specifically, plaintiff claims that the statute is not ambiguous and that there was no need for the hearing justice to "resort to" the *West* factors. Nevertheless, plaintiff asserts that each of the three factors weighs in favor of a conclusion that the time constraint in § 45-59-22(c) is mandatory. In response, TSDMA submits that the hearing justice "correctly ruled that [plaintiff's] claim fails as a matter of law" and, further, that the *West* factors instruct that the statute is directory rather than mandatory.

We begin by addressing plaintiff's argument that the language of § 45-59-22(c) is clear and unambiguous and that, therefore, we need not entertain the *West* factors. We do not disagree with plaintiff that the General Assembly intended that there be compliance with the time constraint set forth in the statute. Indeed, the parties do not dispute that TSDMA failed to file the continuation petition

within the time required by the statute. The facts further indicate that TSDMA made the continuation approval filing with the City of Providence on October 14, 2009, and that the city accepted the filing. However, we must determine whether the time constraint is in fact mandatory, as plaintiff argues, or merely directory. *See, e.g.*, *Whittemore v. Thompson*, 139 A.3d 530, 548 (R.I. 2016) ("[W]e have held on multiple occasions that apparently mandatory language is not necessarily mandatory where the language is directed at public officers or where the legislature does not provide a sanction for the failure to meet that requirement, so long as substantial rights of the parties are not prejudiced.").

We reprise § 45-59-22(c):

> "Any district management authority *will* be automatically dissolved and the designation of a management district will be automatically terminated at the end of the third full fiscal year after its creation and designation and after it has actually commenced providing services unless the continuance of the existence of the district management authority and the designation of the district is approved in writings which are filed with the clerk of the municipality within which the management district is located and are signed by persons who own real property located within the district and within any subdistrict constituting, in the aggregate, not less than sixty percent (60%) of the aggregated assessed valuation of all real property, not exempt from taxation by law." (Emphasis added.)

Like the word "shall," the word "will" generally "contemplates something mandatory or the imposition of a duty * * *." *Begg v. Alexander-Scott*, 242 A.3d 23, 29 (R.I. 2020) (quoting *In re Estate of Chelo*, 209 A.3d 1181, 1184 (R.I. 2019)).

- 10 -

However, "where the language of a statute is directed at public officers *or* where the Legislature does not provide a sanction for the failure to meet that requirement, the statute may be deemed directory so long as substantial rights of the parties are not prejudiced." *Rosa v. PJC of Rhode Island, Inc.*, 270 A.3d 37, 41 (R.I. 2022) (emphasis added) (brackets omitted) (quoting *Begg*, 242 A.3d at 29). "As such, 'where the act is performed but not in the time or in the precise manner directed by the statute, the provision will not be considered mandatory if the purpose of the statute has been substantially complied with and no substantial rights have been jeopardized.'" *Id.* at 41-42 (quoting *Begg*, 242 A.3d at 29).

The parties and the hearing justice in this case relied on the factors set forth in *West* to support their analyses on whether the statutory time limitation is mandatory or directory. As stated therein, "[t]his Court looks to a variety of factors when analyzing whether time provisions are directory or mandatory, including (1) the presence or absence of a sanction, (2) whether the provision is the essence of the statute, and (3) whether the provision is aimed at public officers." *West*, 18 A.3d at 534.

We begin by addressing plaintiff's argument that § 45-59-22(c) is not directed at public officers. The plaintiff submits that TSDMA and its board of directors are not made up of public officers, but of private owners of real property in the district. In support of this argument, plaintiff contends that "the Legislature * * * provided

that DMAs would have 'a distinct legal existence from the municipality' * * * § 45-59-8, and that DMAs 'will not be subject to laws or ordinances relating generally to municipalities or to municipal agencies or departments,' * * * § 45-59-26."

In response, TSDMA contends that it should be considered a public body for purposes of § 45-59-22(c), because a DMA is considered an agency of the municipality and exercises governmental functions of the municipality. TSDMA highlights that, while the management of a DMA is in the hands of private property owners in the district, the members of a DMA's governing body are statutorily exempt from liability.

A DMA is "an instrumentality and agency of the municipality" but has "a distinct legal existence from the municipality." Section 45-59-8. It performs "public and essential governmental functions of the municipality." *Id.* Furthermore, officers and directors are qualified members of the public body for purposes of liability. Section 45-59-25. Additionally, DMAs must comply with the Access to Public Records Act (G.L. 1956 chapter 2 of title 38), the Open Meetings Act (G.L. 1956 chapter 46 of title 42), and most provisions of the Code of Ethics (G.L. 1956 chapter 14 of title 36). *See* § 45-59-26(a). Otherwise, DMAs are not "subject to laws or ordinances relating generally to municipalities or to municipal agencies or departments." Section 45-59-26(b). Accordingly, we conclude that TSDMA is a

public body and that the deadline set forth in § 45-59-22(c) is directed at public officers.

We next address whether § 45-59-22(c) contains a sanction. The plaintiff contends that the statute clearly sets forth a penalty—automatic dissolution—if the DMA fails to adhere to the deadline. TSDMA counters that the word "sanction" does not appear in the statute and, further, that dissolution is not a sanction, but a way to ensure that inactive DMAs no longer have the status of DMAs. TSDMA submits that it is active and has continued to be active since its creation in 2006, with the support of most property owners within the district.

Black's Law Dictionary defines a "sanction" as "[a] penalty or coercive measure that results from failure to comply with a law, rule, or order * * *." Black's Law Dictionary 1612 (12th ed. 2024). Section 45-59-22 provides three methods by which a DMA may be dissolved. Subsection (a) states that "[a]ny district management authority may be dissolved and the designation of a management district terminated by ordinance or resolution of the city or town council * * *." Under subsection (b), a DMA "must be dissolved * * * upon the receipt of a written petition for dissolution signed by persons who own real property located within the district * * *, not less than sixty percent (60%) of the aggregate valuation of all real property * * * located within the district." Both subsection (a) and subsection (b)

- 13 -

require affirmative action—by the city or town council and, in the case of subsection (b), by persons signing a petition. *See* § 45-59-22.

Subsection (c), however, turns that dynamic around. Dissolution of a DMA becomes the default position. A DMA will be automatically dissolved at a discrete moment in time—"the end of the third full fiscal year after its creation * * * and after it has actually commenced providing services"—unless its continuance is approved in writing by persons who own not less than sixty percent of the aggregate assessed valuation of all real property in the district. Section 45-59-22(c). We are hard-pressed to characterize dissolution under this circumstance as a penalty or coercive measure.

It is our opinion that § 45-59-22(c) is a "provision related to a matter of procedure[,]" and, as discussed *infra*, the time constraint is not the essence of the statute. *West*, 18 A.3d at 535 (quoting *Providence Teachers Union v. McGovern*, 113 R.I. 169, 178, 319 A.2d 358, 364 (1974)). We further agree with the hearing justice's observation that "the time limit operates to prevent inactive district management authorities from continuing operations and the requirement is designed to make sure that district management authorities do not continue to exist where stakeholders directly impacted by them do not come forward to support their perpetual existence or operation." In the case before us, TSDMA continued to operate and provide services for nearly twelve years before the present controversy

began.  Indeed, TSDMA filed the required signatures a few months after the deadline, and it does not appear that there was any "penalty" imposed by the city for TSDMA's failure to perfectly adhere to the statutory deadline.  Accordingly, we conclude that § 45-59-22(c) does not contain a sanction.

The parties additionally disagree as to whether the automatic-dissolution provision encompasses the essence of the statute. The plaintiff argues that, while deadlines are never the purpose of a statute, where a deadline is important to the statute's ultimate purpose—here, having an active DMA that serves the district with consent of the owners—the deadline is essential.  TSDMA counters that the time constraint in § 45-59-22(c) does not reflect the essence of the statute; rather, an active DMA serving the district is the statute's essence.

We agree with the trial justice and TSDMA that the time constraint is not the essence of the statute; the essence of the District Management Authorities Act is to have active DMAs serve the communities of Rhode Island. *See* § 45-59-2.  This is further supported by the fact that TSDMA has been operating since 2006, and plaintiff brought this action over a decade later.  TSDMA complied with the statute after the deadline but well before this litigation began.  We are unable to conclude that the dissolution provision in § 45-59-22(c) is mandatory when "the purpose of the statute has been substantially complied with and no substantial rights have been jeopardized." *Rosa*, 270 A.3d at 41-42 (quoting *Begg*, 242 A.3d at 29).

We are therefore of the opinion that the dissolution provision contained in § 45-59-22(c) is directory in nature. Accordingly, we hold that the hearing justice did not err in granting the defendant's motion for summary judgment.

## IV

## Conclusion

For the reasons set forth herein, we affirm the judgment of the Superior Court. The record may be returned to the Superior Court.

**STATE OF RHODE ISLAND**

**SUPREME COURT – CLERK'S OFFICE**
Licht Judicial Complex
250 Benefit Street
Providence, RI 02903



## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Walter L. Bronhard d/b/a Walter L. Bronhard Real Estate v. Thayer Street District Management Authority. |
| **Case Number** | No. 2023-270-Appeal. (PC 21-1993) |
| **Date Opinion Filed** | November 27, 2024 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Chief Justice Paul A. Suttell |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Kevin F. McHugh |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>Levi W. Swank, Esq. *Pro Hac Vice*<br>Catherine A. Shaghalian, Esq. |
| | For Defendant:<br><br>Amy B. Yarbro, Esq. |